## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA FOR
THE USE OF SOUTHWEST GLASS,
INC, a New Mexico corporation,

                Use Plaintiff,

     v.                           No.

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA; FIDELITY
AND DEPOSIT COMPANY OF
MARYLAND; and ZURICH
AMERICAN INSURANCE COMPANY,

                Defendants.

## **COMPLAINT**

COMES NOW Use Plaintiff United States of America for the Use of Southwest Glass, Inc. (hereinafter "SW Glass"), by and through counsel, Calvert Menicucci, P.C. (Sean R. Calvert), and for its complaint states as follows:

### JURISDICTION

1.    SW Glass is a corporation organized and existing under the laws of the State of New Mexico having its principal place of business in Albuquerque, New Mexico.

2.    Upon information and belief Travelers Casualty & Surety Company of America ("Travelers") is a foreign corporation offering insurance and surety products in the State of New Mexico.

3.    Upon information and belief Fidelity and Deposit Company of Maryland ("Fidelity") is a foreign corporation offering insurance and surety products in the State of New Mexico.

4.    Upon information and belief Zurich American Insurance Company ("Zurich") is a foreign corporation offering insurance and surety products in the State of New Mexico.

5.    Jurisdiction is conferred upon this Court by the Miller Act, 40 U.S.C.A. §§ 3131 *et seq.*

6.    Venue for this action properly rests in the District of New Mexico, under the Miller Act, 40 U.S.C.A. § 3133, providing venue in the United States District Court for the District in which the contract was performed.

<u>FACTUAL AVERMENTS</u>

7.    On or about April 24, 2018, Caddell Construction Co. (DE), LLC ("Caddell") entered into a contract with the United States, Department of the Army, Corps of Engineers to construct the NNSA Albuquerque Complex Project, Contract No. W912PP-18-C-0004 (the "Project").

8.    Pursuant to 40 U.S.C. § 3131, Caddell, as principal, and Travelers, Fidelity and Zurich, as co-sureties, executed a payment bond in the full amount of Contract No. W912PP-18-C-0004 for the prompt payment of all persons supplying labor or materials to be utilized in the prosecution of the work on the Project. A copy of the payment bond is attached as Exhibit 1.

9.    In connection with Caddell's performance of work on the Project, it entered into a subcontract with SW Glass dated July 13, 2018. A copy of the Subcontract Agreement is attached as Exhibit 2 to this Complaint.

10.    Pursuant to the terms of the subcontract SW Glass was to provide labor, materials, equipment, incidentals, Davis Bacon Wage Rate, and supervision for the aluminum doors and frames, aluminum storefronts,

aluminum curtainwalls, aluminum pass windows, automatic door operators, glazing, glazed surface films, metal skylights and exterior sun control devices for the Project.

11.    SW Glass provided labor and materials, including labor and materials pursuant to changes in the subcontract scope of work, through the date of the filing of this Complaint and continues to provide labor and materials to the Project in accordance with its subcontract.

12.    Pursuant to the terms of the subcontract with SW Glass "Subcontractor shall be paid per the Electronic Funds Transfer (EFT) or Automatic Clearing House (ACH) method.   The Subcontractor shall complete and return the attached enrollment form to the Contractor's Montgomery, Alabama office no later than 10 days after receipt of this Subcontract.  Any changes to the form will result in all payments being made by check and sent via U.S. mail".  Exhibit 2, p. 17.

13.    SW Glass completed and returned the enrollment form provided by Caddell providing SW Glass' banking information.

14.    SW Glass invoiced Caddell and Caddell paid SW Glass on Payment Applications 1 through 4 via ACH or EFT transfer to SW Glass' bank account.

15.    On or about June 23, 2020 Caddell received an e-mail that appeared to come from SW Glass requesting a change in ACH account, but was actually from a third party attempting to misdirect the funds.

16.    The ACH form provided to Caddell by the third party contained several obvious signs that it should not be trusted, including the fact that the person identified as the contact at SW Glass and the contact at the bank were the same individual with the same telephone number and it directed payment to a bank, Sun Trust Bank, which does not even possess

branches in New Mexico much less in the small town in New Mexico where the bank was supposedly located.  A copy of the fraudulent ACH form is attached as Exhibit 3.

16.    Caddell, contrary to the contract terms accepted the fraudulent ACH form.

17.    On June 26, 2020 Caddell issued payment on SW Glass' Payment Application No. 5 in the amount of $680,000.00 to the fraudulent ACH account.

18.    Upon information and belief, no notice was provided to SW Glass of the payment or of the change in the ACH and no attempts were made to confirm the validity of the new ACH banking information.

19.    On July 22, 2020 Caddell issued payment on SW Glass' Payment Application No. 6 in the amount of $735,000.00 to the fraudulent ACH account.

20.    Caddell has failed to pay SW Glass for the work included in Payment Applications 5 and 6 and for labor and materials provided to the Project totaling $1,415,000.00.

21.    On February 26, 2021 SW Glass provided notice to Travelers, Fidelity and Zurich pursuant to the Miller Act of its claim in the amount of One Million, Four Hundred Fifteen Thousand Dollars ($1,415,000.00).

22.    The total unpaid amount for labor and materials furnished in connection with Payment Applications 5 and 6 by SW Glass on the Project is currently One Million, Four Hundred Fifteen Thousand Dollars ($1,415,000.00).

22.    Although demand for payment has been made upon Travelers, Fidelity and Zurich, SW Glass has not been paid the balance due and owing to it for the labor and materials furnished in connection with the project.

23.   SW Glass continues to provide labor and materials to the Project.

24.   This suit has been commenced within one (1) year from the date upon which the last of the labor was performed or materials supplied by SW Glass.

25.   The construction by SW Glass was performed in Albuquerque, New Mexico, and all labor and materials supplied by SW Glass were within the District of New Mexico.

26.   SW Glass is a claimant under and is entitled to the protection of the bond required under 40 U.S.C.A. § 3131, *et seq.*

COUNT ONE

MILLER ACT

27.   SW Glass realleges and incorporates herein the allegations set forth above in its Complaint.

28.   The failure of Caddell, Travelers, Fidelity and Zurich to pay SW Glass for labor and materials furnished in connection with the project constitutes a violation of the Miller Act, 40 U.S.C.A. § 3131, *et seq.*

29.   As a direct and proximate result of Defendant's violation of the Miller Act, SW Glass has been damaged in the amount of $1,415,000.00, plus interest, costs and attorney's fees.

COUNT TWO

ON PAYMENT BOND

30.   SW Glass realleges and incorporates herein the allegations set forth in paragraphs 1 through 29 above of its Complaint.

31.   The payment bond issued by Travelers, Fidelity and Zurich is a valid and enforceable contract.

32.     SW Glass is an intended third-party beneficiary of the payment bond.

33.     SW Glass is entitled to payment of its claim against the payment bond pursuant to the terms of the bond.

34.     Travelers, Fidelity and Zurich's refusal to pay SW Glass for the labor and materials furnished constitutes a breach of the terms of the bond.

35.     As a direct and proximate result of Travelers, Fidelity and Zurich's breach of the terms of the payment bond, SW Glass has been damaged in the amount of $1,415,000.00, plus interest, costs and attorney's fees.

WHEREFORE, Southwest Glass & Glazing, Inc. respectfully requests judgment against Travelers, Fidelity and Zurich in the amount of $1,415,000.00, plus interest, costs and attorney's fees and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Calvert Menicucci, P.C.

Sean R. Calvert
Counsel for Plaintiff
8804 Washington St., NE, Suite E
Albuquerque, New Mexico 87113
(505) 247-9100
scalvert@hardhatlaw.net

| **PAYMENT BOND** (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 04/26/2018 | **OMB Control Number: 9000-0045** **Expiration Date: 7/31/2019** |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) Caddell Construction Co. (DE), LLC 2700 Lagoon Park Drive Montgomery, Alabama 36109 | TYPE OF ORGANIZATION ("X" one) ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☐ CORPORATION ☒ OTHER (Specify) LLC STATE OF INCORPORATION Delaware | |
|---|---|---|

| SURETY(IES) (Name(s) and business address(es)) Travelers Casualty and Surety Company of American, One Tower Square, Hartford, CT 06183; Fidelity and Deposit Company of Maryland, 1299 Zurich Way, Schaumburg, IL 60196-1056; and, Zurich American Insurance Company, 1299 Zurich Way, Schaumburg, IL 60196-1056 | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) 127 | THOUSAND(S) 0 | HUNDRED(S) 0 | CENTS 0 |
| | CONTRACT DATE 04/24/2018 | CONTRACT NUMBER W912PP18C0004 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | | **PRINCIPAL** | | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal | |
| NAME(S) & TITLE(S) (Typed) | 1. Robert W. Nanney Vice President | 2. | 3. | | |

| | | **INDIVIDUAL SURETY(IES)** | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | | |
| NAME(S) (Typed) | 1. | 2. | | |

| | | **CORPORATE SURETY(IES)** | | | |
|---|---|---|---|---|---|
| **SURETY A** | NAME & ADDRESS | Travelers Casualty and Surety Company of America One Tower Square, Hartford, CT 06183 | STATE OF INCORPORATION Connecticut | LIABILITY LIMIT $ 63,500,000 | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Thomas J. Gentile, Attorney-in-fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

**STANDARD FORM 25A (REV. 8/2016)**
Prescribed by GSA-FAR (48 CFR) 53.228(c)

Exhibit "1"

| | | CORPORATE SURETY(IES) *(Continued)* | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | Fidelity and Deposit Company of Maryland, 1299 Zurich Way, Schaumburg, IL 60196-1056 | STATE OF INCORPORATION Maryland | LIABILITY LIMIT $ 14,504,000 | Corporate Seal |
| | SIGNATURE(S) | 1. *[signature]* | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Thomas J. Gentile, Attorney-in-fact | 2. | | |
| **SURETY C** | NAME & ADDRESS | Zurich American Insurance Company, 1299 Zurich Way, Schaumburg, IL 60196-1056 | STATE OF INCORPORATION New York | LIABILITY LIMIT $ 48,996,000 | Corporate Seal |
| | SIGNATURE(S) | 1. *[signature]* | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Thomas J. Gentile, Attorney-in-fact | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) **BACK**

| | | | |
|---|---|---|---|
| Cost Code: | 074-00000 | **RECEIVED** | Subcontract No.  1056-0026-SC |
| Amount: | $5,578,000.00 | OCT 1 8 2018 | Job No.  1056 |

CADDELL **SUBCONTRACT** (DE), LLC
MONTGOMERY, ALABAMA

This Subcontract made this ____13th____ day of ____July____ , ____2018____ , by and between

Caddell Construction Co. (DE), LLC, 2700 Lagoon Park Drive, Montgomery, Alabama 36109-1100 hereinafter the Contractor, and:

| | | | |
|---|---|---|---|
| Name | Southwest Glass & Glazing, Inc. | Contact/Title | Tony Baca / President |
| NAICS Code # | 238152 | Contractor's License # | 1076A |
| Street Address | P.O. Box 90367 | Federal ID # | 85-0203475 |
| City/State/Zip | Albuquerque, NM 87199 | Corporate Status | Corporation |
| Mailing Address | 7121 Blue Water Road Northwest | Phone # | 505-345-5565 |
| City/State/Zip | Albuquerque, NM 87121 | Fax # | 505-345-5964 |
| Cell Phone | N/A | E-Mail | tonyb@southwestglass.com |

**hereinafter the Subcontractor**, to perform a certain part of the work on the following Project, for which the Contractor has heretofore entered into a General Contract with the Owner.

WHEREAS, the Contractor entered into a General Contract with U.S. Army Corps of Engineers, Albuquerque District Of 4101 Jefferson Plaza, NE **(hereinafter the Owner)**, to furnish all labor, services and materials and perform all work to construct NNSA Albuquerque Complex **(hereinafter the Project)** in accordance with the specifications, schedules and drawings prepared by U.S. Army Corps of Engineers, Albuquerque District, and Stantec of 500 Marquette Avenue, Suite 1200, Albuquerque, New Mexico dated February 2018 **(hereinafter the Architect and/or Engineer)**, which are made a part of said General Contract and which are now made a part of this Subcontract insofar as they apply, and the parties hereto desire to contract with reference to a part of said Project.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, it is agreed as follows:

Article I – Subcontractor shall furnish all labor, services, materials, fuel, equipment, tools, machinery and supplies; perform all work; and do all things necessary to complete diligently and timely the following part or parts of the work of the General Contract in all respects as is therein required of Contractor, and all work incidental thereto, namely;
Aluminum Doors and Frames, Aluminum Storefronts, Aluminum Curtainwalls, Aluminum Pass Windows, Automatic Door Operators, Glazing, Glazed Surface Films, Metal Skylights and Exterior Sun Control Devices

RECEIVED

PRIORITY RATING:  TBD
Date(s) Delivery Required:  TBD
Signature: _____
(See Article 4 of Rider)

NOV 1 4 2018

SOUTHWEST GLASS & GLAZING, INC.

Article II – Unless a different period is set forth herein, any notice required of the Contractor or the Subcontractor by this Subcontract shall be in writing and shall be deemed to be given on the date of such notice was personally delivered or two (2) business days after the date such notice is deposited either by certified or registered mail, return receipt requested, postage paid, in the United States mail or sent via commercial carrier with confirmation of delivery and addressed as set forth below:

To the Contractor:
President & CEO
Caddell Construction Co. (DE), LLC
2700 Lagoon Park Drive
Montgomery, Alabama 36109

**RECEIVED**

AUG 0 2 2018

SOUTHWEST GLASS & GLAZING, INC

To the Subcontractor:
Tony Baca / President
Southwest Glass & Glazing, Inc.
P.O. Box 90367
Albuquerque, NM 87199

Exhibit "2"

Revision 010 – 4/4/2014

Article III - (a) Contractor agrees to pay Subcontractor for said work for the firm fixed price of $ 5,578,000.00 _____ Dollars, (the risk of any currency exchange or price escalations shall be borne by Subcontractor, unless otherwise provided for in this Subcontract), subject to additions and deductions as herein provided, payable as the work progresses, based on estimates submitted by Subcontractor and approved by Contractor, and subject to receipt by Contractor of payment from the Owner. Subcontractor acknowledges and agrees that no progress payment shall be processed by the Contractor prior to the Contractor's receipt of a fully executed Subcontract, and other required documentation that is acceptable to Contractor, including but not limited to Certification Forms, Payment and Performance Bonds (Letter of Credit, Subcontracting Plans, Ethics Plans, etc.) and satisfactory evidence of Insurance and current Certified Payrolls (see Rider for additional requirements). Contractor may, at Contractor's option, withhold retainage at a percentage as set forth in paragraph 3.A.1. of the Rider to the Subcontract until final payment and may withhold payment of any estimate until Subcontractor has furnished Contractor with suitable evidence that it has paid in full for all labor, services, materials and supplies used in the work through the date of the estimate. Final payment shall be made within 30 days after the completion of all work required by the General Contract, written acceptance by the Owner or Owner's representative, and receipt of full payment therefor from the Owner, said written acceptance and full payment to the Contractor being express conditions precedent to Contractor's obligation to make final payment to Subcontractor; except that Contractor may deduct from any progress payment or final payment any sums due to Contractor from Subcontractor under this Subcontract , any other subcontract, or otherwise. Said final payment to Subcontractor shall not be payable until Subcontractor has supplied Contractor with consent of surety, completed warranty forms and guaranties, any other job closing forms required by Owner and Contractor, all in a form satisfactory to Contractor, and has given Contractor final releases of lien and waiver of all claims on forms executed by the Subcontractor and by all of its subcontractors and suppliers. Progress payments shall also be subject to receipt by Contractor of Subcontractor's acceptable written application in the manner and form prescribed by Contractor within the time limits and deadlines predetermined by Contractor. If payment for stored materials is permitted by the General Contract, calculations of values for such materials shall conform to the method provided in the General Contract, otherwise the value shall be determined as the Contractor may specify.

(b) The Subcontractor shall execute and submit an application for payment as required by Article III (a) which includes the "Certification and Partial Release" statement, on the form prescribed by the Contractor. Subcontractor shall also include all waivers and documentation required by the Owner. Contractor will comply with the prompt payment clause at FAR 52.232-27 and Subcontractor is required to also comply with this clause and to include the clauses required by FAR 52.232-27 in each Subcontract, Purchase Order, or Purchase Agreement Subcontractor issues in reference to this Project.

(c) Should Subcontractor at any time fail to pay for all labor, services, materials, equipment or supplies used by Subcontractor in said work when due, Contractor, at its option, may pay for all or part of same and charge to Subcontractor; or Contractor, at its discretion, may pay at any time claims for labor, services, materials, equipment and supplies used in the work and charge same to Subcontractor. If the Contractor incurs any cost or expense arising out of or related to any failure of the Subcontractor to make timely payments to its subcontractors and suppliers, Subcontractor and its surety, if any, shall be liable, jointly and severally, to the Contractor for all such costs, expenses, and attorneys' fees and shall reimburse Contractor within seven (7) days following a written request by the Contractor sent to either the Subcontractor or its surety. If the requested amounts are not reimbursed upon request, Contractor shall be entitled to withhold and deduct such amounts from any payment otherwise due the Subcontractor.

(d) If the Owner or its designated agent does not issue a certificate for final payment or the Contractor does not receive such payment for any cause which is not the fault of the Subcontractor, the Contractor shall promptly inform the Subcontractor in writing. The Contractor shall also diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of the final payment due for the Subcontract Work. At the Subcontractor's request and expense, to the extent agreed upon in writing, the Contractor shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest. Subcontractor hereby agrees that any bond or contract action against the Contractor, its surety, or both shall be stayed pending the exhaustion of any action, claim, or proceeding against the Owner seeking release of final payment. By signing this Subcontract, Subcontractor agrees to and represents that it shall inform each of its subcontractors and vendors in writing that it has provided a payment bond to the Contractor securing Subcontractor's obligation to make prompt payments to all persons furnishing labor, services, materials or supplies used in the prosecution of the work covered by this Subcontract and that Subcontractor will provide a copy of its payment bond to its subcontractors or vendors upon request. In the event that the Subcontractor fails to furnish a copy of the payment bond upon request, Subcontractor authorizes Contractor to furnish a copy upon request and agrees to reimburse the Contractor for all costs and expanse related thereto in accordance with Article III(c).

Article IV - Subcontractor shall, upon execution and delivery of this Subcontract, also deliver to the Contractor separate performance and payment bonds, payable to Contractor, each in the sum of $ 5,578,000.00 _____ on forms supplied by Contractor, with surety thereon satisfactory to Contractor, for the faithful performance of this Subcontract, including changes or modifications thereto without consent of surety, and for the payment of all labor, services, equipment, tools, machinery, equipment and machinery rental, materials and supplies, and all other items of cost or expense incurred by Subcontractor in the prosecution of said Project. Premium on said bonds is to be paid by Contractor based upon the sum of the subcontract amount as listed in Article III (a) line one. Bond premium shall not exceed $ 59,248.00 _____ for the Subcontract. The bond premium is not part of the Subcontract price. Subject to the maximum value set forth in this Article, Contractor will reimburse Subcontractor for only the actual cost in providing these bonds and proof of cost and/or payment is required. Contractor prefers to pay Subcontractors bonding agent direct. (Bond premiums, if paid by Contractor, shall not exceed the standard premium for the classification in which Subcontractor is working as set by the Surety Association of America, and any excess amount shall be paid by Subcontractor.) It is understood that any bond premiums in excess of those amounts listed in this paragraph shall be paid by the Subcontractor. Should the Subcontractor seek reimbursement from Contractor for those excess amounts,

such reimbursement request should be pursued in accordance with Article VII as a change or claim by the Subcontractor. In no event shall Contractor or its surety be liable to Subcontractor for any amount greater than the amount actually received by Contractor from Owner for such change or claim for Bond premiums.

Article V - (a) Subcontractor expressly agrees to be bound by the General Contract in the performance of this Subcontract and hereby assumes toward Contractor all the obligations, duties and responsibilities which the Contractor, by the General Contract, assumes towards the Owner, as applicable to the work performed pursuant to this Subcontract.  Contractor shall have the same rights and privileges against the Subcontractor herein as the Owner in the General Contract has against Contractor.  An unpriced copy of the General Contract is on file at the principal office of the Contractor and is available for inspection by the Subcontractor with reasonable advanced notice during normal business hours.

(b)   Subcontractor acknowledges that it has read the General Contract affecting its operation together with all related plans, specifications, general and special provisions and conditions incidental thereto and by examination thereof and of the project premises has satisfied itself as to the nature and location of the work, the character, quantity, and kinds of materials to be encountered and the character, kind and quantity of equipment needed during the prosecution of the work, and the location, conditions and other matters which can in any manner affect the work under this agreement. Further, said Subcontractor is familiar with respective rights, powers, benefits, and liabilities of the Contractor and the Owner thereunder and agrees to comply with and be bound by, and perform all provisions thereof, applicable to Subcontractor.

(c) All work shall be done under the direction of the Owner or Owner's representative through Contractor, whose decisions as to the true construction and meaning of the General Contract, including the drawings and specifications, shall be as final and binding on Subcontractor as they are on Contractor under the General Contract.  Subcontractor shall conform to and abide by any additional specifications, drawings, or explanations provided by the Owner to illustrate the work to be done.

(d)  If applicable, this Project will implement Partnering throughout the duration of the work.  Subcontractor agrees to actively participate in Partnering Sessions with the Owner.

(e)  To the extent that the Owner has furnished the Contractor with the contract documents either in printed form or electronically, the Contractor will provide one copy of the same to Subcontractor.  The Subcontractor, by executing this Subcontract, acknowledges receipt of one (1) set of contract documents applicable to the work under this Subcontract and further acknowledges that it will be the Subcontractor's responsibility to review all information contained on these contract documents and verify that all such information is correct before distributing any material generated from it.

1.   The Subcontractor shall:
   a.      Check all drawings furnished immediately upon receipt.
   b.      Compare all drawings and verify the figures before laying out the work.
   c.      Promptly notify the Contractor of any discrepancies before proceeding with execution of the applicable work.
   d.      Be responsible for any errors which might have been avoided by complying with   this subparagraph (e).

2.   Omissions from the drawings or specifications or the misdescription of details of work which are manifestly necessary to carry out the intent of the drawings and specifications, or which are customarily performed, shall not relieve the Subcontractor from performing such omitted or misdescribed details of the work.  The Subcontractor shall perform such details as if fully and correctly set forth and described in the drawings and specifications at no increase in the Subcontract Price.

(f)  All required shop drawings, manufacturers' data, samples, color boards, erection drawings, equipment layouts, certifications and test reports (excluding field tests) shall be submitted complete for approval within 30 days from date of this Subcontract. Two sets of approved shop drawings, product data, samples, and similar submittals shall be provided to Contractor to be used for the "as-built" set. Operation and Maintenance Manuals (hard copy, electronic version, videos, etc.) will be provided as required by the General Contract and this Subcontract.

(g)  Subcontractor shall secure and pay for all permits, fees, licenses, and inspections necessary for the proper execution and completion of Subcontractor's work.

(h)  Contractor shall have the right, but not the obligation, to inspect all working drawings and to inspect all work required of the Subcontractor hereunder, and all such working drawings and work shall be subject to approval of the Contractor. Contractor shall have the right, but not the obligation, to inspect equipment of Subcontractor, and the adequacy of such equipment shall be subject to approval of Contractor.  It is expressly understood that the approval of the Subcontractor's working drawings, to include, but not limited to product data, samples, and submittals and inspection of the Subcontractor's work and equipment is general only and that such approval or inspection will not relieve the Subcontractor from any responsibility whatsoever.

(i)  Subcontractor expressly agrees that the provisions of the General Contract between the Contractor and the Owner governing Inspection of Construction, Extra Work, Changes, Differing Site Conditions, Delays and Extensions of Time, Disputes, Termination for Convenience, Claims and Disputes shall be applicable to all extra work, changes, changed or differing site conditions, delays and extensions of time, disputes, and appeals arising out of or in connection with this Subcontract.

(j) The Subcontractor will furnish all layout and engineering as required to perform the work of this Subcontract. Basic control lines and monuments will be furnished by the Contractor.

(k) If applicable, this Subcontract requires the listing of employment openings with the local office of the State Employment Service System.

(l) Subcontractor's attention is directed to the Contract Clauses entitled Utilization of Small Business Concerns and Small Disadvantaged Business Concerns FAR 52.219-8 and Small Business and Small Disadvantaged Business Subcontracting Plan – Alternate II FAR 52.219-9. Where applicable, Subcontractor shall adopt and comply with a Subcontracting Plan similar to the Contractor's approved Subcontracting Plan, a copy of which will be made available upon request. Subcontractor shall provide all periodic reports and other documentation as necessary to show compliance.

(m) All materials shall be new, of best quality, and free of defects. If requested, Certificates of Conformance, signed by an officer of the company, shall be provided for all materials supplied under this Subcontract.

(n) Clean Air and Water Certification. This Subcontractor, by signing this Subcontract, hereby certifies that [a] Any facility to be used in the performance of this proposed contract is not listed on the Environmental Protection Agency (EPA) List of Violating Facilities; [b] The Subcontractor will immediately notify the Contractor, before award, of the receipt of any communication from the Administrator, or a designee, of the EPA, indicating that any facility that the Subcontractor proposes to use for the performance of the contract is under consideration to be listed on the EPA List of Violating Facilities; and [c] The Subcontractor will include a certification substantially the same as this certification, including this paragraph (n), in every nonexempt lower tier subcontract.

(o) Subcontractor agrees to comply with all environmental laws, ordinances, rules, regulations, orders and decisions issued by any federal, state or local body or agency relating to Subcontractor providing product(s) and/or service(s) pursuant to this Subcontract. Subcontractor also agrees to comply with all Owner's rules, regulations, orders, decisions, security requirements, etc. Subcontractor shall indemnify and hold Contractor harmless from any claims or liabilities arising from any noncompliance with any such laws, ordinances, rules, regulations, orders or decisions, as relates to the work of this Subcontract.

(p) Subcontractor personnel shall wear identifying markings on hard hats clearly identifying the company for whom the employee works. Subcontractor will require its employees to wear at all times the identification badge/card as required by Contractor. When required by the Contracting Officer or other authorized representative of the Government, the Subcontractor shall obtain and submit fingerprints of all persons employed or to be employed on the project by the Subcontractor, comply with all requirements for background checks and verification of identity. Subcontractor, by signing this Subcontract, agrees that it shall provide all documentation necessary to gain access to project site. Subcontractor agrees that it shall have no claim for additional cost or time for compliance with those processes.

Article VI - (a) Subcontractor shall begin work as soon as instructed by Contractor and shall prosecute its work and the several parts thereof efficiently and at such times and in such order as Contractor shall direct to keep the same sufficiently in advance of the other parts of the work required under the General Contract and to avoid any delay in the progress of Contractor's work or the work of other subcontractors, or in the completion of the project as a whole. Contractor may, from time to time, reschedule the time for and the order of the work to be performed and may require Subcontractor to prosecute, in preference to other parts of the work, such part or parts as Contractor may specify and Subcontractor agrees to comply with such directions at no increase in price. Contractor may require weekly conferences at the job site. Subcontractor's authorized representative shall attend each conference held while Subcontractor's work is under way and on such other occasions as required by Contractor.

(b) The Subcontractor agrees to cooperate with and assist the Contractor in preparing and updating a detailed project schedule for the Subcontractor's portion of the work. Subcontractor agrees to arrange its schedule of values, shop drawing transmittals, fabrication, deliveries, necessary labor, services, materials, equipment, and supervision to conform to the dates required by the project schedule including subsequent updates.

(c) Subcontractor, at Contractor's request and at the time specified in such request, shall submit to Contractor (1) an itemized schedule of values for pay purposes of work to be performed, and (2) progress procurement and man-hour completion schedules, satisfactory in form and content to Contractor, and upon Contractor's acceptance of said schedules, shall prosecute the work in accordance therewith, subject to the provisions of Article VI (a) above.

(d) Any damages for delay caused by Subcontractor, including actual damages which Contractor sustains or for which Contractor is liable to others, and including any damages, liquidated or otherwise, for which Contractor is liable to Owner, or as results from Subcontractor's failure to comply with progress schedules required by Article VI (b) above, shall be deducted by Contractor from the contract sum for said work. If such deduction results in an overpayment, Subcontractor shall pay Contractor such overpayment on demand.

(e) Should Subcontractor be delayed or interfered with in its work by the act, neglect or default of the Owner or Owner's representative or by reason of fire or other casualty, or on account of riots or strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause beyond the Contractor's control, or any circumstance caused or contributed to by any other party performing a part of the work or furnishing materials for the work. Subcontractor may request an extension of time for the performance of the work. Subcontractor may also request damages or additional compensation as a result of the delay or interference, as herein provided,

but shall not be entitled to any increase in the Subcontract price or to damages or additional compensation or an extension of time as a consequence of such delay or interference except to the extent that Contractor is entitled to receive and actually does receive damages, or additional compensation, or an extension of time from the Owner, or a combination thereof. Contractor will cooperate with Subcontractor to enforce any just claim against the Owner or Owner's representative for delay or interference and shall be reimbursed by Subcontractor for any expense, including attorney's fees, in connection with any such claim asserted at the request of Subcontractor.

(f)   Should Subcontractor be delayed, interfered with, disrupted or hindered in its work by Contractor, then Contractor shall owe Subcontractor therefor only an extension of time for completion equal to the delay caused by Contractor and then only if written claim for an extension of time as a result of the delay is made to Contractor within four calendar days from the time of the beginning of the delay, interference, disruption or hindrance.   Under no circumstances shall Contractor or its surety be liable to pay to Subcontractor any compensation for such delay, interference, disruption or hindrance.   Should no written claim be so made by Subcontractor, Subcontractor's right to an extension of time will be deemed to have been waived by Subcontractor.

(g)   Neither Contractor nor its surety shall be liable to Subcontractor for any damages, loss or expense resulting from acts or omissions (whether or not negligent), failure to perform, delays in performance or defaults of another subcontractor or any materialmen or supplier in connection with the performance of any of the work covered by the General Contract or this Subcontract.   Any claim of Subcontractor for such damages, loss or expense shall be made, and any action shall be filed, directly against the other subcontractor or materialmen or supplier, without making the Owner or Contractor, or its surety a party to any action brought upon such claim. Subcontractor agrees that any other such subcontractor, materialmen or supplier shall have a direct right of action against Subcontractor for damages, loss or expense resulting from actions or omissions (whether or not negligent), failure to perform, delays in performance or defaults of Subcontractor.

(h)   In accordance with the Subcontract Documents, Subcontractor shall keep the project free from accumulation of waste materials, rubbish, and debris.   Subcontractor shall remove from the premises on a daily basis or as often as directed by the Contractor, all waste materials, rubbish, and debris which may accumulate from the prosecution of said work, and shall clean up any adjacent work soiled by its workmen and shall leave floors "broom clean".   Should Subcontractor fail to do so, Contractor may, at its option, perform same at Subcontractor's expense. Any boxes/crates placed in Contractor's dumpster by Subcontractor or its agents, shall be flattened or disassembled to minimize the amount of space these objects will occupy within these dumpsters.

(i)   If Subcontractor deems that surfaces to which or over which its work is to be applied or affixed are unsatisfactory or unsuitable, it shall give written notice of said condition to Contractor before proceeding or before taking remedial action, and if such notice is not given, Subcontractor will be deemed to have fully accepted those surfaces and will be fully and solely responsible and liable for any and all expenses, loss or damage resulting from said condition.

(j)   Subcontractor shall take reasonable steps to protect its work until completion and acceptance of said work by the Contractor and Owner.  If Subcontractor fails to take reasonable steps to protect its work and Subcontractor's work is subsequently damaged or destroyed, or if during the course of Subcontractor's work said damage or destruction is a result of the negligence of Subcontractor, the Subcontractor shall agree to repair or replace said damaged or destroyed work at no cost to Contractor.  If the work is damaged or destroyed as a result of actions of persons other than Subcontractor, the Subcontractor shall repair or replace said damaged or destroyed work in accordance with Article VI (g).

Article VII - (a)  Subcontractor shall make all alterations and changes and furnish material for and perform all extra work or omit any work the Owner or Owner's representative may require, and at a reasonable addition to or deduction from the Subcontract price hereinafter set forth and prorata to the same.  NO EXTRA WORK, ALTERATIONS OR CHANGES SHALL BE MADE, HOWEVER, EXCEPT, UPON WRITTEN ORDER FROM CONTRACTOR, AND NEITHER CONTRACTOR NOR ITS SURETY SHALL BE HELD LIABLE TO SUBCONTRACTOR FOR ANY EXTRA LABOR, MATERIALS OR EQUIPMENT FURNISHED WITHOUT SUCH WRITTEN ORDER.  NO OFFICER, EMPLOYEE OR AGENT OF CONTRACTOR HAS ANY AUTHORITY TO DIRECT ANY EXTRA WORK, ALTERATIONS OR CHANGES BY ORAL ORDER.  The amount to be paid by Contractor, or allowed by Subcontractor, as a result of such extra work, alterations or changes shall be stated in such order, if the amount can be agreed upon; but if not, then Subcontractor shall proceed with the work as directed and follow the appeal procedure set up in the General Contract between the Owner and Contractor (such appeal to be at Subcontractor's expense). Should Contractor at any time waive the above-stated requirement for a written order with respect to any extra work, alterations or changes, such waiver shall not constitute a waiver of the requirement for such written order with respect to any other extra work, alteration or change.

(b)  Subcontractor shall promptly submit proposals for alterations or changes in the manner provided in the General Contract unless instructed otherwise in writing by Contractor.  If not promptly submitted within the time frame given by Contractor, Subcontractor waives all rights to recovery of any additional compensation or, where a credit is involved, accepts the deductive amount determined by the Owner, Architect, and/or Contractor.

(c)  Subcontractor shall submit all claims for extra costs or extra work through the Contractor for transmittal to the Owner or as may be otherwise provided for in the General Contract.  Any statement herein to the contrary notwithstanding, as to any claim of Subcontractor for extra costs or extra work, in no event shall Contractor or its surety be liable to Subcontractor for any amount greater than the amount actually received by Contractor from Owner for such claim, less Contractor's normal overhead and profit.

Article VIII - Subcontractor shall provide safe and sufficient facilities at all times for inspection of the work by Contractor, Owner, or their duly authorized representatives, and shall, upon written notice from Contractor, proceed promptly (within two calendar days) to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which the Contractor, Owner or Owner's representative shall condemn or fail to approve, and shall promptly make good all such work and other work damaged or destroyed in removing or making good said condemned work.

Article IX - (a) Subcontractor shall at all times supply adequate tools, appliances, and equipment, a sufficient number of properly qualified workmen, and a sufficient amount of materials and supplies of proper quality to prosecute said work efficiently and promptly, and to maintain progress in accordance with progress schedules provided for in Article VI (a) and (b) above. It is agreed that time is of the essence with respect to Subcontractor's work. If, in the opinion of Contractor, Subcontractor falls behind said schedules, Subcontractor shall take such steps as may be necessary to improve its progress, and Subcontractor shall, upon written direction by Contractor, proceed promptly within forty-eight (48) hours to increase the number of shifts, to institute or increase overtime operations, to increase its forces and equipment, to procure materials from others, and to take such other steps as may reasonably be required in order to make the Subcontractor's progress conform to such schedules, all without additional cost to the Contractor. If Subcontractor fails to comply with any such written direction from Contractor, such failure shall be deemed a material breach of this agreement and Contractor may, in addition to any other remedies Contractor may have under this agreement, withhold all payments due Subcontractor until Subcontractor's progress conforms to such schedules.

(b) Subcontractor shall promptly pay for all materials purchased, and shall pay all workmen each week and, at Contractor's request, shall obtain and furnish Contractor weekly with signed receipts from all workmen showing the date of payment, amount paid, number of hours paid for, the days on which said work was performed, the classification of the labor so paid and the rate of wages per hour paid. Subcontractor shall supply Contractor weekly with a reasonable number of copies of its payroll, certified by Subcontractor. Upon request Subcontractor shall provide social security ID numbers for each employee that worked on this Project. This information is requested solely for purposes for achieving compliance with the Davis-Bacon Act.

(c) Subcontractor's attention is directed to Contract Clauses entitled Subcontracts (Labor Standards) FAR 52.222-11. The Subcontractor is required to comply with this clause and execute and return to Contractor Standard Form 1413, "Statement and Acknowledgement", included herein and that Subcontractor will deliver to Contractor an updated and completed Standard Form 1413, "Statement and Acknowledgement" in accordance with this FAR clause after the award of any subsequent Subcontract, Purchase Agreement, Purchase Order, etc. hereunder.

(d) The Subcontractor shall provide adequate supervision of the work and shall have a competent foreman or superintendent satisfactory to Contractor on the work at all times during progress, with full authority to act for Subcontractor. At the request of the Contractor the Subcontractor shall demonstrate that its supervisory personnel can effectively communicate in the native language(s) of the members of its workforce as well as English.

(e) Subcontractor shall furnish all lighting, temporary heat, power, water, watchmen, ice water, sanitary facilities, dewatering equipment, quality control testing, storage facilities, street cleaning and temporary roads required for Subcontractor's portion of the work.

(f) The Subcontractor will provide, maintain, and remove from the project site on completion of work all required temporary offices, structures for use of its employees, sheds and storage facilities complete with all necessary utilities, gas, telephone, and water which it may require for the execution of this Subcontract.

(g) The Subcontractor is solely responsible for the quality control of all work covered by this Subcontract including procedures, implementation, inspection, testing, documentation, daily Q.C. reports, corrective work, etc. The Subcontractor shall designate an individual who is at the jobsite full time and responsible for all quality control. The Subcontractor will adhere to and comply with the Contractor's Quality Control Program.

(h) Any of the following shall constitute default in all events under this Subcontract, but this list is not meant to be exhaustive as there are other acts and omissions on the part of the Subcontractor which may constitute a default:

1. Failure to provide a letter of credit or bonds as herein provided;
2. Failure to provide insurance as herein provided;
3. Failure to abide by Contractor or Owner' Safety requirements, whichever is most stringent;
4. Failure to pay payroll, subcontractors, and suppliers in full when due;
5. Failure to commence correction of faulty work within four days after receipt of written notice to proceed;
6. Failure to properly man the job within four days after written notice;
7. Failure to submit progress, procurement and manhour completion schedules and fulfill the requirements of Article X hereof, as required by Contractor;
8. Failure to pay any sums due hereunder within ten days after written demand;
9. Submitting a claim to or bringing an action against Contractor which is in violation of the terms of this Subcontract;
10. Failure to fulfill the requirements of Article XIV hereof;
11. Failure to perform any other obligations of Subcontractor hereunder; and
12. Submission of unsupported or baseless claims or false certifications.

(i)     Should this Subcontract be terminated for default, Subcontractor shall assign all of its purchase orders and subcontracts to Contractor if Contractor, in its sole and absolute discretion, requests such assignments. Subcontractor agrees to incorporate such provisions in its agreements with its suppliers and subcontractors to effectuate this provision. Nothing herein shall create any duty on the part of Contractor to accept the assignment of any purchase order or subcontract hereunder.

(j)     (1) If the Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default under any provision of this Agreement, the Subcontractor is unable to give adequate assurance that the Subcontractor will promptly cure the default and perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions of the Bankruptcy Code.

(2) If the Subcontractor is not performing in accordance with the Project Schedule at the time a petition in bankruptcy is filed, or at any subsequent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform, may avail itself of such remedies under this Agreement as are reasonably necessary to maintain the Project Schedule. The Contractor may offset against any sums due or to become due the Subcontractor all costs incurred in pursuing any of the remedies provided including, but not limited to, reasonable overhead, profit and attorneys' fees. The Subcontractor shall be liable for the payment of any amount by which costs incurred may exceed the unpaid balance of the Subcontract Amount.

Article X - (a) Should Subcontractor fail or refuse to proceed with or to properly prosecute the said work with promptness, diligence, and efficiency, or fail or refuse to properly perform its work as directed by Contractor, or should Subcontractor fail or refuse to properly perform or abide by any terms, covenants, conditions or provisions; contained in this subcontract, or should Subcontractor otherwise default hereunder, then Contractor may, after four days written notice by certified mail, or personal delivery to Subcontractor as identified in Article II, withhold payment of any estimate or other amount otherwise due Subcontractor.   Subcontractor and its Surety acknowledge and agree that such notice shall constitute a Declaration of Default if such is required under the terms of the Payment/Performance Bonds. In addition to all other rights of Contractor hereunder, the Contractor may proceed as follows:

1. Provide such materials, supplies, equipment, machinery, tools, labor and supervision as may be necessary to complete said work, pay for same and deduct the amount so paid from any money then or thereafter due Subcontractor plus 10% fee, or

2. Terminate the employment of Subcontractor, enter upon the premises and take possession, for use in completing the work, of all the materials, supplies, tools, equipment, machinery and appliances of Subcontractor thereon and complete the work or have same completed by others, and be liable to Subcontractor for no further payment under this Subcontract until final payment is due, and then only if and to the extent that the unpaid balance of the amount to be paid under this subcontract exceeds the expense plus 10% fee of Contractor in finishing the work.

(b)  If the amount expended by Contractor under "1" above and/or the cost of completing the work under "2" above, plus 10% fee, exceeds the unpaid balance of the amount to be paid under this Subcontract. Subcontractor shall pay Contractor such excess upon demand. Any election by Contractor to proceed under "1" above shall not preclude a subsequent election to proceed under "2" above.

(c)  Should Subcontractor default in any of the provisions of this Subcontract and should Contractor employ an attorney to advise it in regard to its rights in view of any such default, or to advise or assist contractor in requiring Subcontractor to cure any default or breach or to enforce any provision hereof, or to collect damages for breach of the Subcontract, or to recover on the bonds mentioned in Article IV above, Subcontractor and its surety agree to pay Contractor such reasonable attorneys' fees and other costs as it may expend therein.

(d)  The rights and remedies granted to Contractor under this Article and pursuant to the other provisions of this Subcontract shall be cumulative and are not intended to be in lieu of any legal right or remedy which Contractor may have against Subcontractor for breach of this Subcontract or default hereunder afforded by state or federal law.

(e) By signing this Agreement, Subcontractor acknowledges and agrees that the Contractor shall have the absolute right to terminate this Subcontract, in whole or in part, at any time for its convenience and require Subcontractor to cease work thereon by giving written notice to the Subcontractor.   Should it be subsequently determined, in any action or proceeding, that no grounds for a default termination existed, Contractor and Subcontractor hereby agree in advance that it will be converted to and treated as a termination for convenience of the Contractor under this Article. In the event of such termination, the Subcontractor shall not be entitled to recover any sum for damages or otherwise based on a claim of loss of profits or anticipated business or any similar matter and that no claim for consequential, exemplary, or punitive damages, loss of profits or for attorneys' fees will be brought against Contractor or its surety as a result of any termination. For any termination by Contractor for its convenience, Contractor shall pay the Subcontractor and Subcontractor's recovery shall be limited to an amount equal to the actual costs incurred by the Subcontractor in performing the Work as of the date of the notice of termination by the Contractor, plus a 10% fee, which shall compensate the Subcontractor in full for its general and administrative expense, overhead, and profit, less the total of the following:

1. the market value of materials and equipment purchased for the Work which is terminated and which have not been incorporated, as of the date of notice of termination, into the Work terminated, and which can be returned to the vendor or used by the Subcontractor for other purposes, plus

2. the salvage value of materials and equipment purchased for the Work which is terminated and which have not been incorporated, as of the date of notice of termination, into the Work terminated, and which cannot be returned to the vendor or used by the Subcontractor for other purposes, plus

3. the total of payments, if any, made by the Contractor; provided, however, in no event shall the Subcontractor's termination recovery exceed the unpaid balance of the Subcontract Price as of the date of the notice of termination of the Work. The Contractor shall have the option to accept the materials or equipment in paragraphs 1 and 2 above in lieu of the deduction from the termination recovery.

Within 90 days after the receipt of such notice of termination for convenience or the date it is determined that there were no valid grounds for a default termination, the Subcontractor shall submit its termination recovery claim resulting from such termination. The Contractor shall have the right to verify such claim at any reasonable time or times by inspecting or auditing the records, facilities, Work, materials, and equipment of Subcontractor and/or its Subcontractors relating to such claim. Payment of the termination recovery, as set forth herein, shall constitute Contractor's and its surety's only liability in the event of termination hereunder.

(f) In the event the termination is for convenience of the Owner rather than convenience of the Contractor, the above paragraph shall not apply and settlement would be made under provisions of the General Contract.

Article XI - To secure performance by Subcontractor and any funds expended by Contractor hereunder, Contractor shall have a lien upon all materials, tools, appliances, and equipment of Subcontractor on the premises or used in connection with said work.

Article XII - (a) Subcontractor shall turn over all of its work to Contractor in good condition and free and clear of all claims, encumbrances, and liens of Subcontractor or third parties. Subcontractor shall protect and save harmless Contractor, Contractor's surety and Owner from all claims, encumbrances, and liens growing out of the performance of this Subcontract. Any fees or expenses incurred by the Contractor on account of default by the Subcontractor or on account of any claims against the Owner, Contractor, Contractor's surety, or Subcontractor by third parties arising out of the matters covered in this Subcontract shall be chargeable to the Subcontractor and its surety, who agree to pay such reasonable fees and expenses, including reasonable attorney's fees. Any statement herein to the contrary notwithstanding, Contractor shall have the right, but not the obligation, to defend any such claims against the Subcontractor, at the Subcontractor's expense. Any dispute between Contractor and Subcontractor shall not excuse nonpayment of valid job obligations owed to sub-subcontractors or suppliers by this Subcontractor and its surety.

(b) Subcontractor shall, as often as required by the Owner or Contractor, furnish a sworn statement showing all parties who furnish labor or materials to Subcontractor, with their names and addresses and the amount due or to become due. A like statement may be required of Subcontractor for any subcontractors of Subcontractor. Upon request Subcontractor shall furnish to Contractor documentation verifying information furnished herein.

(c) Subcontractor agrees to guarantee unconditionally its work, including its workmanship and all materials and all equipment, to Contractor to the same extent and for the same duration as Contractor guarantees that work to the Owner in the General Contract or under applicable law. At the completion of its work, Subcontractor shall provide such written guarantees, warranties, bonds and assurances as are required of Contractor by the Owner under the General Contract, or if not so required, then Subcontractor shall provide a written guarantee customary for the type of work performed for a period of one year from the date of final acceptance of the entire project by the Owner.

(d) Notwithstanding the lapse of any guaranty or warranty, Subcontractor and its surety shall continue thereafter to be liable to Contractor for any default under or breach of this Subcontract, including any failure to perform work or provide materials or guarantees and warranties in strict accordance with the terms of this Subcontract and all applicable specifications, schedules and drawings made a part of same, for the same period and in all respects to the same extent that Contractor shall remain liable to the Owner under the General Contract. Subcontractor and its surety shall indemnify, hold and save harmless Contractor and its surety against all loss, costs or expense, including attorney's fees, arising out of or resulting from any claim made by the Owner against Contractor or its surety pertaining or relating to work performed or materials or equipment provided by Subcontractor under this Subcontract.

(e) The Contractor will maintain As-Built Drawings, approved shop drawings, product data, samples, and similar submittals in the field office in accordance with the specifications. The Subcontractor shall post all "As-Built" documentation relating to the work of this Subcontract to these items. As-Built posting must be current at all times.

Article XIII - (a) To the fullest extent allowed by law, Subcontractor agrees to indemnify Contractor against and hold Contractor harmless from any and all claims, demands, liabilities, losses, expenses, suits and actions (including attorneys fees) for or on account of any injury to any person or any death at any time resulting from such injury or any damage to any property, which may arise (or which may be alleged to have arisen) out of or in connection with the work covered by this Subcontract, even though such injury, death or damage may be (or may be alleged to be) attributable in part to negligence or other fault on the part of the Contractor or its officers, agents or employees. This obligation to indemnify and hold Contractor harmless shall not be enforceable if, and only if, it be determined by judicial proceedings that the injury, death or damage complained of was attributable to the fault or negligence of the Contractor, or its officers, agents, or employees. Subcontractor agrees to defend all claims, suits and actions against Contractor (in which connection Subcontractor shall employ

attorneys acceptable to Contractor) on account of any injury, death or damage and shall reimburse Contractor for all expenses, including reasonable attorneys fees, incurred by reason of such claim, suit or action or incurred in seeking indemnity or other recovery from Subcontractor hereunder.  In the event Subcontractor uses any of Contractor's tools, equipment, scaffolds, ladders or temporary facilities, Subcontractor shall hold Contractor harmless from all claims, including negligence claims, which may arise out of or in connection with the use thereof.

(b)  Subcontractor shall procure at its expense prior to the commencement of any work hereunder, and shall maintain for the duration of this Subcontract, public liability insurance and also such employer's liability or worker's compensation insurance as may be necessary to insure the parties hereto against any liability for injuries to, or the death of, any of Subcontractor's employees, and all insurance required by the law of the place where the said work is to be done and shall furnish Contractor, prior to commencement of any work, with satisfactory evidence that such insurance has been obtained and will continue in force until the completion of said work, and if Subcontractor should sublet any of this work to a third party Subcontractor shall see that said third party shall do likewise.  At Contractor's request, Subcontractor shall provide Contractor with satisfactory evidence that all such insurance costs have been paid.  The attached Rider to this Subcontract specifies the types and amount of insurance to be obtained by the Subcontractor.

c)  Subcontractor, as part of the obligations assumed in this Subcontract, accepts exclusive liability for all withholdings, taxes, contributions, deposits and/or premiums (including interest and penalties thereon) required to be withheld, remitted, deposited and/or paid by or on behalf of Contractor or Subcontractor by the Federal and State Social Security Acts, the Federal and State Unemployment Compensation Acts, the Federal Insurance Contributions Act, or any amendments thereto, and any other future acts, laws, regulations or rules of a Taxing Jurisdiction, with respect to the wages, compensation, salaries and benefits paid or due to employees of Subcontractor or Sub-subcontractors in connection with the performance of the work under this Subcontract.  In addition, Subcontractor assumes exclusive liability for the payment of all applicable dues, benefits, and other contributions to any labor union or organization or welfare fund, with respect to all persons, by whomsoever employed, engaged in the performance of the work provided for herein.  Subcontractor agrees to furnish Contractor with all suitable information reasonably requested by Contractor to show that it has complied with the requirements set forth in this paragraph, and by executing this Subcontract, Subcontractor represents and confirms that it is authorized to and accepts any corresponding liabilities.

d)  Subcontractor accepts exclusive liability for any and all personal property, sales, use, excise, gross receipts or other similar taxes (including interest and penalties thereon) required by the law of any Taxing Jurisdiction to be paid or collected by Subcontractor or any Sub-subcontractors or vendors or any other person or persons acting for, through or under it or any of them, by reason of the performance of the work provided for herein or the acquisition, ownership, furnishing or use of any materials, equipment, supplies, labor, services, or other items in connection with the work provided for herein.

e)  Subcontractor accepts exclusive liability for any and all taxes imposed on Subcontractor as a result of Subcontractor's connection with any Taxing Jurisdiction, including, but not limited to, any income, franchise, business license or privilege taxes, or other similar taxes or fees imposed upon taxpayers doing business within a Taxing Jurisdiction.

f)  Subcontractor agrees that it shall, at the time and manner provided and without additional expense to Contractor, abide by and conduct the work hereunder in full compliance with any and all applicable laws, rules and regulations of a Taxing Jurisdiction.  Subcontractor further agrees to indemnify and hold Contractor harmless from any and all liability with respect thereto, including legal fees and litigation arising from, or related to, Subcontractor's failure to pay any withholding, sales, use, personal property, income, franchise, business license or privilege taxes, or other taxes based upon labor, services, materials, equipment or other items acquired, performed, furnished or used in connection with the work provided for herein.

Article XIV - Subcontractor agrees to employ only orderly and competent labor as will not impede progress of any part of the work and as will permit work to be carried on harmoniously and without delay.  Subcontractor agrees that whenever Owner or Contractor shall inform it in writing that any person employed by Subcontractor and engaged in the work at the project site is, in Owner's or Contractor's opinion, unqualified, incompetent, disorderly or otherwise objectionable, such employee shall be immediately removed from work on this project and shall not again be used thereon without Owner's or Contractor's prior written consent.  The replacement of such personnel should be at the Subcontractor's sole expense.

Article XV - Subcontractor agrees to indemnify and hold and save Contractor harmless from any and all claims or suits for infringement of patents, or violation of patent rights, arising out of or relating to the work of Subcontractor, and further agrees to pay all loss and expense incurred by Contractor by reason of any such claim or suits, including attorneys' fees.

Article XVI - (a) Subcontractor shall not sublet, assign or transfer this Subcontract, or any part thereof or the proceeds thereof, without the written consent of Contractor.  However, in event of a subletting, assignment or transfer of this Subcontract, Subcontractor and Subcontractor's surety shall remain fully bound to the Contractor under all terms of this Subcontract, as if there has been no subletting, assignment or transfer of this Subcontract or any part thereof.

(b)  In all events Subcontractor, in addition to all Subcontractor's other obligations hereunder, shall be liable for and shall indemnify and hold harmless Contractor from any and all claims of every kind and character which may be made by or for the account of any subcontractor or supplier of the Subcontractor herein and from all claims of every character and description which may be made against

any subcontractor or supplier of the Subcontractor named herein.

(c) Should Contractor and Subcontractor become involved in any action, arbitration or other legal proceeding arising out of, resulting from or pertaining in any manner to this Subcontract, and should Contractor make Subcontractor a written offer of settlement which is not accepted by Subcontractor within ten days of the date of the offer, and should a final judgment or decision thereafter result from the action, arbitration or other legal proceeding that is not more favorable to Subcontractor than the last offer previously made by Contractor, then Subcontractor and its surety agree to reimburse Contractor for all expenses incurred in connection with said litigation, including reasonable attorneys' fees, within ten days after demand for such reimbursement.

Article XVII - Subcontractor agrees that should the Owner require renegotiation under or terminate the General Contract, Subcontractor will, upon written demand of Contractor, furnish all information necessary for such renegotiation or contract termination proceedings. Subcontractor agrees that its sole remedy under the Subcontract or the Miller Act shall be as, and only as, provided for in the General Contract and agrees that the Subcontractor shall be paid only such sums as shall be paid by the Owner for the account of the Subcontractor excluding such amounts as may be paid for the Contractor's overhead and profit, if any.

Article XVIII - In the event Subcontractor obtains approval of any material or method of operation which will in any way make changes in, or adds to the work, or cost thereof, to be done by the Contractor or any of its other subcontractors or vendors, Subcontractor shall be responsible for the additional cost resulting therefrom. Submittals in connection with request for approvals, as well as routine specifications and drawings submittals, shall clearly and specifically identify in a separate, signed writing any proposed deviation or variation from contract drawings and specifications. Deviations or variations from the contract requirements are discouraged. In the event the Subcontractor determines that a deviation or variation is necessary, the Subcontractor shall state specifically in a separate, signed writing what portion deviates or varies and why a deviation or variation is necessary, at the time of submission. Without such documentation, deviations or variations will not be considered.

Article XIX - In the event any options are permitted under the plans and specifications for the furnishings of materials or performance of work included in this Subcontract, Subcontractor may exercise such options only in such manner that a finished job with respect to the finished products, services or work provided hereunder will be obtained without additional cost to Contractor or any of its other subcontractors or vendors, even though items of work may be required under sections of the specifications other than those covered by this Subcontract with respect to the products, services or work furnished hereunder.

Article XX - In case of any dispute between Subcontractor and Contractor involving, or allegedly involving, in whole or in part, the work of the Subcontractor or the rights or duties of the Owner as to the Subcontractor's work, the Subcontractor agrees to be bound to the Contractor to the same extent that the Contractor is bound to the Owner by the terms of the General Contract and by any and all decisions or determinations made thereunder by the Owner, Owner's representative, board, court, arbitration panel, or other tribunal to the extent that the work of the Subcontractor is involved. Subcontractor agrees that, upon Contractor's request, Subcontractor will consent to participate in any proceeding involving the Owner or other third party. If Subcontractor files a Miller Act suit or other action against the Contractor, its payment bond surety, or both, Subcontractor shall, upon the Contractor's request, consent to a stay of such suit or action pending the exhaustion of the procedures for the resolution of disputes under the General Contract. Subcontractor further agrees that its compliance with this process for the consistent resolution of disputes and claims shall not be deemed to be a waiver of its Miller Act rights. If such a dispute involving or allegedly involving the Subcontractor's work is prosecuted or defended by Contractor against Owner under the terms of the General Contract, Subcontractor agrees to furnish all documents, statements, witnesses and other information required by Contractor for such purpose and to pay or reimburse Contractor for all expenses and costs incurred in connection therewith. It is expressly understood that as to any and all materials, equipment or services furnished or agreed to be furnished by Subcontractor, and as to any and all damages, if any, incurred by Subcontractor in connection with the project, Contractor and its surety shall never be liable to Subcontractor to any greater extent than the Owner is liable to Contractor, less Contractor's normal overhead and profit. No dispute shall interfere with the progress of construction and Subcontractor agrees to proceed with its work as directed by the Contractor. In the event of any dispute as to the scope of the work to be performed by Subcontractor, or any dispute as to whether Subcontractor is entitled to damages or extra compensation, Subcontractor shall continue to proceed diligently with the performance of the work, this Subcontract, and any disputed work, pending resolution of the dispute. The existence of a dispute shall not be grounds for any work stoppage or failure to perform by Subcontractor nor limit the right of Contractor to proceed to remedy any default by Subcontractor.

Article XXI - (a) With respect to any Subcontractor claim submitted by Contractor to Owner, Subcontractor agrees to provide at the time of the submission of the claim to Contractor a certification, signed by a senior company official in charge of the work involved, that the claim is made in good faith, that the supporting data are accurate and complete to the best of his or her knowledge and that the amount requested accurately reflects the contract adjustment for which Subcontractor believes the Owner is liable. Subcontractor agrees Contractor may, in its discretion, rely exclusively on this certification in providing any certification Contractor may be required to submit to the Owner insofar as the claim includes a claim for or on behalf of Subcontractor. Subcontractor further agrees to recertify its claim in the above form at any time requested by Contractor. In the event that the Contractor requests additional supporting information and data from the Subcontractor in connection any certification provided by the Contractor, Subcontractor shall promptly provide such information and data at no cost to the Contractor.

(b) If the General Contract is subject to the Truth in Negotiations Act (Title 10 of the United States Code, Section 2306a; Title 41 of the United States Code, Section 253), Contract Disputes Act of 1978 (Title 41 of the United States Code, Section 601, *et seq.*) the False Claims Act (Title 31 of the United States Code, Section 231, *et seq.*), the Forfeiture Statute (Title 28 of the United States Code, Section

2514), Title 18 of the United States Code, Section 287, Title 18 of the United States Code, Section 1001, Title 10 of the United States Code, Section 2306(1), and Title 41 of the United States Code Section 254, or any other federal laws or any state law which impose requirements of good faith, accuracy, completeness and fair dealing in connection with the presentation of cost proposals or claims against, or the provisions of statements to, any party, the Subcontractor shall be bound to these requirements to the same extent as the Contractor. Subcontractor and its surety, if any, hereby undertake to defend at its own cost with legal counsel mutually acceptable to the Subcontractor and the Contractor, indemnify and hold harmless Contractor and their respective officers, directors, employees, sureties and agents, from any and all loss, cost, penalty, damage, claim, demand, expense and assessment whatsoever, including reasonable attorney's fees, arising from, relating to or in any manner connected with any allegation or claim of, or finding of, a violation of one or more applicable federal or state laws, provided that the alleged violation relates to, is directed at or is attributable to the Subcontractor, its representatives, agents, or employees, specifically, or relates to, is directed at or is attributable to those claims and supporting data submitted by Subcontractor in connection with the presentation of any claim by the Subcontractor for additional compensation, or adjustment of the contract terms, payment request, or any other act or statement by the Subcontractor, its representatives, agents, or employees.

(c) The Subcontractor, by signing this Agreement, hereby certifies that to the best of its knowledge it complies with the requirements set forth in FAR 52.203-11 - Certification and Disclosure Regarding Payment to Influence Certain Federal Transactions, that to the best of its knowledge and belief no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on its behalf in connection with the awarding of this Subcontract, and that the Subcontractor will include the language of this certification in all subcontracts, purchase orders, purchase agreements, etc., awards in excess of $100,000 and require that all recipients of such a subcontract, purchase order, purchase agreement, etc., to certify and disclose accordingly and to obtain the equivalent certification from lower tier subcontractors, vendors or suppliers with subcontracts, purchase agreements or purchase orders in excess of $100,000.

(d) Subcontractor, by signing below, certifies that this Subcontractor or its principals, are not debarred, suspended, or proposed for debarment or suspension by the Federal Government.

Article XXII - (a) Subcontractor shall, at its own expense, conform to the basic safety policy of the Contractor, and comply with all specific safety and record keeping requirements promulgated by any governmental authority including without limitation, the requirements of the Occupational Safety and Health Act of 1970 and the Construction Safety Act of 1969, both as amended, and all standards and regulations which have been or shall be promulgated by the parties or agencies which administer such Acts. Subcontractor shall have and exercise full responsibility for compliance hereunder by its agents, employees, materialmen, and subcontractors, generally, and in particular, with respect to its portion of the work on this project; shall itself comply with said requirements, standards and regulations, and require and be directly responsible for compliance therewith on the part of its said agents, employees, materialmen and subcontractors; and shall directly receive, respond to, defend, and be responsible for all citations, assessments, fines or penalties which may be incurred by reason of its failure or failure on the part of its agents, employees, materialmen, or subcontractors to so comply.

(b) Subcontractor agrees to comply with all laws concerning discrimination in employment and to defend and hold harmless Contractor from any and all liability and claims arising from Subcontractor's employment practices.

(c) The Contractor and Subcontractor shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex or national origin. Moreover, these regulations require that prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.

(d) In the event any assessment, fine or penalty is imposed upon Contractor due to the failure of Subcontractor or its agents, employees, materialmen, or subcontractors to comply with all safety and record keeping requirements promulgated by any governmental authority under or pursuant to the Occupational Safety and Health Act of 1970 and the Construction Safety Act of 1969, both as amended, and all standards and regulations which have been or shall be promulgated by the departments or agencies which administer such acts, then Subcontractor and its surety agree to pay to Contractor an amount equal to such assessment, fine or penalty at the time the payment of such assessment, fine or penalty is due to be paid by Contractor.

Article XXIII – (a) Direct Discussions: If a dispute arises out of or relating to this Subcontract, the parties mutually agree to diligently pursue a settlement in a cooperative manner at the project level. A Dispute Review Board consisting of two (2) authorized representatives per party that possess the necessary authority to fully resolve all disputes will be established at the beginning of the project. If any dispute is not resolved by the parties onsite employees, then within ten (10) business days of a written request by either party, members of the Dispute Review Board shall conduct direct discussions and make a good faith effort to resolve such dispute.  The Dispute Review Board will collectively decide the most economical way to conduct these direct discussions.  Unless otherwise agreed in writing, if the dispute remains unresolved after twenty (20) business days from the first date the Dispute Review Board conduct direct discussions, then either the Subcontractor or the Contractor may proceed under paragraph (b) below.



(b) All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, which are not controlled by another provision of this Subcontract, shall be finally decided by binding arbitration and the arbitration will be administered by the AAA in accordance with the Construction Industry Arbitration Rules (AAA Rules) of the American Arbitration Association (AAA), as herein modified, unless the parties mutually agree otherwise. The arbitration will proceed according to the following terms: (a) the site

of the arbitration shall be Montgomery, Alabama; (b) any dispute involving more than $400,000 shall be heard by an arbitration panel consisting of three (3) arbitrators, at least one of whom shall be an attorney; (c) the arbitrators shall have at least fifteen (15) years of experience in the construction industry or construction law; and have previously served as an arbitrator on similar proceedings of like magnitude; (d) the AAA shall not unilaterally appoint an arbitrator until the parties have had the opportunity to select from three (3) lists of proposed arbitrators, each list containing at least ten (10) names; (e) there shall be no discovery except for the taking of up to three (3) depositions maximum for Contractor and up to three (3) depositions maximum for Subcontractor (subcontractor's surety is included in this maximum total of three (3) depositions) not lasting more than eight (8) hours each, even if discovery is provided for by applicable AAA Rules or applicable law or even if subcontractor's surety becomes a party to the arbitration; (f) each party shall initially be responsible for its own legal fees and the fees and costs of the arbitrators and the AAA, subject to the final decision of the arbitrators; (g) Subcontractor's surety, if any, agrees, if so requested by Contractor, to become a party to and be bound by the results of such arbitration; and (h) Subcontractor and its surety, if any, consent to a consolidated arbitration involving other parties if their presence is needed for a just and complete resolution of disputed issues. It is agreed that the mutual obligation to arbitrate shall survive the completion of the Project. If Subcontractor files a Miller Act suit or other action against the Contractor, its payment bond surety, or both, Subcontractor shall, upon the Contractor's request, consent to a stay of such suit or action pending the completion of the arbitration proceedings. Subcontractor further agrees that its compliance with this process for the resolution of disputes and claims shall not be deemed to be a waiver of its Miller Act rights. No dispute shall interfere with the progress of construction and Subcontractor agrees to proceed with its work as directed by the Contractor. In the event of any dispute as to the scope of the work to be performed by Subcontractor, or any dispute as to whether Subcontractor is entitled to damages or extra compensation, Subcontractor shall continue to proceed diligently with the performance of the work, this Subcontract, and any disputed work, pending resolution of the dispute. The existence of a dispute shall not be grounds for any work stoppage or failure to perform by Subcontractor nor limit the right of Contractor to proceed to remedy any default by Subcontractor. A demand for Arbitration shall be made no later than after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations for the State of Alabama or the location of the project, whichever is shorter.

Article XXIV – (a) In the event of any conflict between the terms of this Subcontract and the terms of the General Contract with Owner, the terms of this Subcontract shall govern.

(b) The provisions of the attached Rider and Attachment "A" complement and are made a part of this Subcontract. In the event of any conflict between the terms of this Subcontract and the terms of the Rider, the terms of the Rider shall govern.

Article XXV - All obligations assumed by Subcontractor under this Subcontract shall be at the expense of Subcontractor.

Article XXVI - Although prepared by Contractor, this Subcontractor has reviewed this Subcontract and in the event of any dispute over its meaning or application, it is agreed that this document will be interpreted reasonably and neither more strongly for nor against either party.

Article XXVII - This Subcontract contains the entire agreement between the parties and supersedes all prior oral or written agreements, quotes or representations. All additions hereto or changes to this Subcontract shall be in writing and shall not be binding unless same are in writing. SUBCONTRACTOR ACKNOWLEDGES THAT IT IS ON NOTICE THAT NO OFFICER, AGENT OR EMPLOYEE OF CONTRACTOR HAS ANY AUTHORITY, WHATSOEVER, TO AMEND OR CHANGE THIS SUBCONTRACT IN ANY RESPECT UNLESS THE AMENDMENT OR CHANGE IS IN WRITING AND SIGNED BY AN OFFICER OF BOTH PARTIES.

IN WITNESS WHEREOF, the parties hereto have caused this Subcontract to be executed the day and year first above written.

WITNESS

WITNESS

SUBCONTRACTOR:

SOUTHWEST GLASS AND GLAZING, INC.

By:

Title: ANTONY S. BACA, PRESIDENT

Date: 10\11\18

CADDELL CONSTRUCTION CO. (DE) LLC

By:
Robert W. Nanney

Title: Vice President

Date: 11 - 8 - 18

Subcontract No. 1056-0026-SC

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 1
Subcontract No. 1056-0026-SC

This Rider is hereby attached to and made a part of the Subcontract with Southwest Glass & Glazing, Inc. in accordance with Article XXIV (b) of the Subcontract.

The obligations of the Subcontractor under this Rider shall be in addition to, and not in derogation of, the liabilities and obligations of the Subcontractor under the Subcontract unless herein specifically set forth to the contrary.

**DOCUMENTS ENTITLED:**
Solicitation No. W912PP18-R-0001
Contract No. W912PP18-C-0004
Project Name: NNSA Albuquerque Complex
Location: Bernalillo County, New Mexico
RFP Name: NNSA Albuquerque Complex
RFP Documents
Solicitation, Contract Line Item Number (CLIN) Schedule (Section 00 10 00)
Representations and Certifications (Section 00 45 00)
Contracting Forms and Supplements; Wage Determination (Section 00 50 00)
Conditions of the Contract, Contract Clauses (Section 00 70 00)

RFP Revisions/Addenda
- 0001    Dated 11/22/17
- 0002    Dated 12/08/17
- 0003    Dated 12/20/17
- 0004    Dated 2/06/18
- 0005    Dated 2/16/18
- 0006    Dated 2/23/18
- 0007    Dated 2/27/18
- 0008    Dated 3/01/18
- 0009    Dated 4/19/18

General Wage Decision No. NM180040 (Building), dated 4/06/2018

100% Request for Proposal Drawings and Specifications Prepared by U.S. Army Corps of Engineers, Albuquerque District, and Stantec of 500 Marquette Avenue, Suite 1200, Albuquerque, New Mexico dated February 2018.

**DIVISION 00 – PROCUREMENT AND CONTRACTING REQUIREMENTS (if applicable)**
- 00 10 00    SOLICITATION, OFFER AND AWARD (SF 1442); SSF1442 CONTINUATION PAGE; PROPOSAL SCHEDULE
- 00 45 00    REPRESENTATIONS AND CERTIFICATIONS
- 00 50 00    CONTRACTING FORMS AND SUPPLEMENTS; WAGE DETERMINATION
- 00 70 00    CONDITIONS OF THE CONTRACT; CONTRACT CLAUSES

**DIVISION 01 - GENERAL REQUIREMENTS (if applicable)**
- 01 01 01    SPECIAL CONTRACT REQUIREMENTS
- 01 01 50    SEQUENCE OF WORK
- 01 02 00    BRAND NAME OR EQUAL
- 01 11 00    SUMMARY OF WORK
- 01 12 00    ADDITIONAL DRAWING AND FF&E CHANGES
- 01 20 00    INTERFACE WITH OTHER WORK
- 01 30 00    ADMINISTRATIVE REQUIREMENTS
- 01 31 00    NNSA BUILDER PROJECT CLOSE OUT REQUIREMENTS
- 01 32 01.00 10    PROJECT SCHEDULE
- 01 33 00    SUBMITTAL PROCEDURES
- 01 33 29    SUSTAINABILITY REPORTING
- 01 35 26    GOVERNMENTAL SAFETY REQUIREMENTS
- 01 35 53.00 10    SECURITY PROCEDURES FOR SECURE AREAS
- 01 42 00    SOURCES FOR REFERENCE PUBLICATIONS

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 2
Subcontract No. 1056-0026-SC

- 01 45 00.00 10   QUALITY CONTROL
- 01 45 00.15 10   RESIDENT MANAGEMENT SYSTEM CONTRACTOR MODE (RMS CM)
- 01 45 35   SPECIAL INSPECTIONS
- 01 50 00   TEMPORARY CONSTRUCTION FACILITIES AND CONTROLS
- 01 51 00   UTILITIES
- 01 53 00   TEMPORARY FENCING
- 01 54 00   SECURITY
- 01 57 05   TRAFFIC CONTROL
- 01 57 19   TEMPORARY ENVIRONMENTAL CONTROLS
- 01 58 00   PROJECT IDENTIFICATION
- 01 58 50   STAGING AREAS
- 01 59 00   OFFICE FACILITY
- 01 62 35   RECYCLED / RECOVERED MATERIALS
- 01 72 00   AS-BUILT DRAWINGS
- 01 72 80   TRANSFER AND ACCEPTANCE OF DoD REAL PROPERTY
- 01 74 19   CONSTRUCTION AND DEMOLITION WASTE MANAGEMENT
- 01 78 00   CLOSEOUT SUBMITTALS
- 01 78 23   OPERATION AND MAINTENANCE DATA
- 01 91 00.15   TOTAL BUILDING COMMISSIONING

**DIVISION 6 – WOODS, PLASTICS, AND COMPOSITES**
- 06 10 00   ROUGH CARPENTRY

**DIVISION 7 – THERMAL AND MOISTURE PROTECTION**
- 07 60 00   FLASHING AND SHEET METAL
- 07 92 00   JOINT SEALANTS
- 07 95 00   EXPANSION CONTROL

**DIVISION 8 – OPENINGS**
- 08 71 00   DOOR HARDWARE
- 08 11 16   ALUMINUM DOORS AND FRAMES
- 08 41 13. 16   ALUMINUM FRAMED STOREFRONT WINDOWS
- 08 44 00   CURTAIN WALL AND GLAZED ASSEMBLIES
- 08 51 13   ALUMINUM PASS WINDOWS
- 08 71 13   AUTOMATIC DOOR OPERATORS
- 08 81 00   GLAZING
- 08 87 00   GLAZED SURFACE FILMS
- 08 60 45   METAL FRAMED SKYLIGHTS
- 10 71 13   EXTERIOR SUN CONTROL DEVICE

**DIVISION 9 - FINISHES**
- 09 90 00   PAINTINGS AND COATINGS

All other Sections of the specifications as applies to the work

The documents referenced above are attachment "A" and form a physical part of this Subcontract.  The Subcontractor, by signing this Subcontract, agrees to abide by these provisions herein, which are applicable to this Subcontract.  Particular attention is directed to the requirements of the following provisions.

FAR 52.203-3 -   Gratuities (Apr 1984)
FAR 52.203-6 -   Restrictions on Subcontractor Sales to the Government (Sep 2006)
FAR 52.203-7 -   Anti-Kickback Procedures (May 2014)
FAR 52.203-8 -   Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity (May 2014)
FAR 52.203-12 -   Limitation on Payments to Influence Certain Federal Transactions (Oct 2010)
FAR 52.203-13 -   Contractor Code of Business Ethics and Conduct (Oct 2015)
FAR 52.203-17 -   Contractor Employee Whistleblower Rights and Requirement To Inform Employees of Whistleblower Rights (Apr 2014)

SC RIDER
NNSA ALBUQUERQUE COMPLEX
ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO

Page No. 3
Subcontract No. 1056-0026-SC

FAR 52.204-2 –    Security Requirements (Aug 1996) Alternate II (Apr 1984)
FAR 52.204-9 –    Personal Identity Verification of Contractor Personnel (Jan 2011)
FAR 52.204-10 –   Reporting Executive Compensation and First-Tier Subcontract Awards (Oct 2016)
FAR 52.209-6 –    Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for
                  Debarment (Oct 2015)
FAR 52.209-9 –    Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013)
FAR 52.209-10 –   Prohibition on Contracting with Inverted Domestic Corporations (Nov 2015)
FAR 52.211-10 –   Commencement, Prosecution, and Completion of Work (Apr 1984)
FAR 52.211-12 –   Liquidated Damages – Construction (Sep 2000)
FAR 52.211-13 –   Time Extensions (Sep 2000)
FAR 52.215-2 –    Audit and Records – Negotiation (Oct 2010)
FAR 52.215-13 –   Subcontractor Certified Cost or Pricing Data - Modifications  (Oct 2010)
FAR 52.217-7 –    Option for Increased Quantity – Separately Priced Line Item (Mar 1989)
FAR 52.219-8 –    Utilization of Small Business Concerns (Nov 2016)
FAR 52.219-9 –    Small Business Subcontracting Plan (Deviation 2016-O0009) (Jan 2017) *Alternate II*  (Nov 2016)
FAR 52.222-1 –    Notice to the Government of Labor Disputes (Feb 1997)
FAR 52.222-3 –    Convict Labor (Jun 2003)
FAR 52.222-4 –    Contract Work Hours and Safety Standards Act - Overtime Compensation  (May 2014)
FAR 52.222-6 –    Construction Wage Rate Requirements (May 2014)
FAR 52.222-7 –    Withholding of Funds (May 2014)
FAR 52.222-8 –    Payrolls and Basic Records  (May 2014)
FAR 52.222-9 –    Apprentices and Trainees (Jul 2005)
FAR 52.222-10 –   Compliance with Copeland Act Requirements (Feb 1988)
FAR 52.222-11 –   Subcontracts (Labor Standards) (May 2014)
FAR 52.222-12 –   Contract Termination-Debarment (May 2014)
FAR 52.222-13 –   Compliance with Construction Wage Rate Requirements and Related Regulations (May 2014)
FAR 52.222-14 –   Disputes Concerning Labor Standards (Feb 1988)
FAR 52.222-15 –   Certification of Eligibility (May 2014)
FAR 52.222-21 –   Prohibition of Segregated Facilities (Apr 2015)
FAR 52.222-26 –   Equal Opportunity (Sep 2016)
FAR 52.222-27 –   Affirmative Action Compliance Requirements for Construction (Apr 2015)
FAR 52.222-35 –   Equal Opportunity for Veterans (Oct 2015)
FAR 52.222-36 –   Equal Opportunity for Workers With Disabilities (July 2014)
FAR 52.222-37 –   Employment Reports on Veterans (Feb 2016)
FAR 52.222-40 –   Notification of Employee Rights Under the National Labor Relations Act (Dec 2010)
FAR 52.222-50 –   Combating Trafficking in Persons (Mar 2015)
FAR 52.222-54 –   Employment Eligibility Verification (Jul 2014)
FAR 52.222-55 –   Minimum Wages Under Executive Order 13658 (Dec 2015)
FAR 52.222-60 –   Paycheck Transparency (Executive Order 13763) (Oct 2016)
FAR 52.222-62 –   Paid Sick Leave Under Executive Order 13706 (Jan 2017)
FAR 52.223-5 –    Pollution Prevention and Right-to-Know Information (May 2011)
FAR 52.223-6 –    Drug Free Workplace (May 2001)
FAR 52.223-18 –   Encouraging Contractor Policies To Ban Text Messaging (Aug 2011)
FAR 52.224-1 –    Privacy Act Notification (Apr 1984)
FAR 52.224-2 –    Privacy Act (Apr 1984)
FAR 52.225-11 –   Buy American Act – Construction Materials Under Trade Agreements (Oct 2016)
FAR 52.225-13 –   Restrictions on Certain Foreign Purchases (Jun 2008)
FAR 52.227-1 –    Authorization and Consent (Dec 2007)
FAR 52.227-2 –    Notice And Assistance Regarding Patent And Copyright Infringement (Dec 2007)
FAR 52.228-5 –    Insurance – Work on a Government Installation (Jan 1997)
FAR 52.229-3 –    Federal, State and Local Taxes (Feb 2013)
FAR 52.232-5 –    Payments Under Fixed Price Construction Contracts (May 2014)
FAR 52.232-27 –   Prompt Payment for Construction Contracts (Jan 2017)
FAR 52.232-40 –   Providing Accelerated Payments to Small Business Subcontractors (Dec 2013)
FAR 52.233-1- –   Disputes (May 2014)
FAR 52.236-2 –    Differing Site Conditions (Apr 1984)
FAR 52.236-3 –    Site Investigation and Conditions Affecting the Work (Apr 1984)
FAR 52.236-5 –    Material And Workmanship (Apr 1984)

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 4
Subcontract No. 1056-0026-SC

FAR 52.236-7 - Permits and Responsibilities (Nov 1991)
FAR 52.236-9 - Protection of Existing Vegetation, Structures, Equipment, Utilities and Improvements (Apr 1984)
FAR 52.236-10 - Operations and Storage Areas (Apr 1984)
FAR 52.236-11 - Use and Possession Prior to Completion (Apr 1984)
FAR 52.236-12 - Cleaning Up (Apr 1984)
FAR 52.236-13 - Accident Prevention (Nov 1991)
FAR 52.242-14 - Suspension of Work (Apr 1984)
FAR 52.243-4 - Changes (Jun 2007)
FAR 52.244-6 - Subcontracts for Commercial Items (Nov 2017)
FAR 52.246-12 - Inspection of Construction (Aug 1996)
FAR 52.246-21 - Warranty of Construction (Mar 1994)
FAR 52.248-3 - Value Engineering – Construction (Oct 2015)
FAR 52.249-2 - Termination for Convenience of the Government (Fixed-Price) (Apr 2012) Alternate I (Sep 1996)
FAR 52.249-10 - Default (Fixed-Price Construction (Apr 1984)

---

DFAR 252.203-7001 - Prohibition of Persons Convicted of Fraud or Other Defense-Contract-Related Felonies (Dec 2008)
DFAR 252.203-7002 - Requirement to Inform Employees of Whistleblower Rights (Sep 2013)
DFAR 252.204-7000 – Disclosure of Information (Oct 2016)
DFAR 252.204-7003 - Control of Government Personnel Work Product (Apr 1992)
DFAR 252.204-7012 - Safeguarding Covered Defense Information and Cyber Incident Reporting (Oct 2016)
DFAR 252.209-7004 – Subcontracting with Firms that are Owned or Controlled by The Government of a Country that is a State Sponsor of Terrorism (Oct 2015)
DFAR 252.215.7000 – Pricing Adjustments (Dec 2012)
DFAR 252.219-7003 - Small Business Subcontracting Plan (DOD Contracts) (Mar 2016)
DFAR 252.223.7004 – Drug Free Work Force (Sep 1988)
DFAR 252.223-7006 – Prohibition on Storage and Disposal of Toxic and Hazardous Materials (Sep 2014)
DFAR 252.225.7012 – Preference for Certain Domestic Commodities (Dec 2017)
DFAR 252.225-7048 – Export-Controlled Items (June 2013)
DFAR 252.227-7033 - Rights in Shop Drawings (Apr 1966)
DFAR 252.231.7000 – Supplemental Cost Principles (Dec 1991)
DFAR 252.236.7000 – Modification Proposals – Price Breakdown (Dec 1991)
DFAR 252.243-7001 - Pricing of Contract Modifications (Dec 1991)
DFAR 252.243-7002 - Requests for Equitable Adjustment (Dec 2012)
DFAR 252.244-7000 – Subcontracts for Commercial Items (Jun 2013)
DFAR 252.247-7023 - Transportation of Supplies by Sea (Apr 2014)
DFAR 252.247-7024 - Notification of Transportation of Supplies by Sea (Mar 2000)

All documents listed above are available for review in the Contractor's home office, and on the Internet at http://www.gpoaccess.gov/cfr/index.html, http://ecfr.gpoaccess.gov, and/or http://www.usace.army.mil/CECT/Pages/Home.aspx. It shall be the Subcontractor's responsibility to review all documents pertaining to this Subcontract and include the appropriate clauses in any lower tier Subcontracts, Purchase Agreements, Purchase Orders, etc. in the manner as outlined in the above documents.

All documents listed above can be made available for review in the Contractor's home office and project office during normal business hours.

IT IS UNDERSTOOD THAT

I.   The following is a general description of the work included in this Subcontract. This description is for the purpose of clarification only and unless specifically excluded does not relieve the Subcontractor from performing all Aluminum Doors and Frames, Aluminum Storefronts, Aluminum Curtainwalls, Aluminum Pass Windows, Automatic Door Operators, Glazing, Glazed Surface Films, Metal Skylights and Exterior Sun Control Devices, complete, which is the intent of this Subcontract.

   A.   Section 06 10 00 – Rough Carpentry, as applies, required and in conjunction with work performed in this subcontract.
   B.   Section 07 60 00 – Flashing and Sheet Metal, as applies, required and in conjunction with work performed in this subcontract.
   C.   Section 07 92 00 – Joint Sealants, as applies, required and in conjunction with work performed in this subcontract.
   D.   Section 07 95 00 – Expansion Control, as applies, required and in conjunction with work performed in this subcontract.
   E.   Section 08 71 00 – Door Hardware, as applies, required and in conjunction with work performed in this subcontract.

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 5
Subcontract No. 1056-0026-SC

F.  Section 09 90 00 – Paintings and Coatings, as applies, required and in conjunction with work performed in this subcontract.
G.  Section 08 11 16 – Aluminum Doors and Frames, complete.
H.  Section 08 41 13. 16 – Aluminum Framed Storefront Windows, complete.
I.  Section 08 44 00 – Curtain Wall and Glazed Assemblies, complete.
J.  Section 08 51 13 – Aluminum Pass Windows, complete.
K.  Section 08 71 13 – Automatic Door Operators, complete, including all auto door operators, controls, actuators, push buttons, and bollards for aluminum swing and sliding doors, including any and all associated hardware as required..
L.  Section 08 81 00 – Glazing, complete.
M.  Section 08 87 00 – Glazed Surface Films, complete.
N.  Section 08 60 45 – Metal Framed Skylights, complete
O.  Section 10 71 13 – Exterior Sun Control Devices, complete.
P.  All miscellaneous items such as cover plates, closure plates, brake metal, sill flashings, copings, stainless steel components, glass shower doors and insulation associated with and required for the work of this Subcontract.
Q.  All break metal, back pans, fasteners, and rigid insulation associated with and required for the work of this Subcontract.
R.  Installation of expansion joint materials, per section 079500 - Expansion Control, associated with and required for the work of this Subcontract.
S.  Installation of all hardware for aluminum doors associated with and required for the work of this Subcontract.

2.  The following items are specifically excluded:

A.  Specification Section 08 12 15 – Interior Prefinished Steel Frames.
B.  Specification Section 07 84 00 – Fire Stopping.
C.  Furnishing of expansion joints, in accordance with section 079500 – Expansion Control, as applies to the work performed in this Subcontract.
D.  Card readers.
E.  Decorative glass types GL1 and GL5 at elevators.
F.  Decorative glass types GL2 at lobby kiosks, GL3 at lobby corridor, and GL4 at logo wall.
G.  Furnishing of hardware for aluminum doors specified in Section 08 71 00 – Door Hardware.
    (Note: All hardware required for Section 08 71 13 – Auto Door Operators is to be furnished and installed under this Subcontract.
H.  Metal wall panels, metal canopies, canopy column wraps and ACM panels.
I.  Aluminum frames for wood doors. Note: provided under Section 08 12 15 – Interior Prefinished Steel Frames.

3.  The following clarifications apply to the work of this Subcontract.

A.  1.  Retainage will not be withheld unless Subcontractor's work does not conform to the requirements of this Subcontract or unless retainage is withheld by the Owner. If retainage is withheld by the Owner, Contractor shall withhold retainage from Subcontractor at the same percentage rate.

    2.  Subcontractor shall be paid per the Electronic Funds Transfer (EFT) or Automatic Clearing House (ACH) method. The Subcontractor shall complete and return the attached enrollment form to the Contractor's Montgomery, Alabama office no later than 10 days after receipt of this Subcontract. Any changes to the form will result in all payments being made by check and sent via U.S. mail.

    3.  Not Used

    4.  Not Used

    5.  No later than 15 days following receipt of the signed Subcontract, Subcontractor shall provide Contractor with a list of all sub-subcontractors, service providers or suppliers who will be providing work, services, or materials for this project. Subcontractor shall promptly update this list whenever requested by the Contractor and shall update this list, as needed, when submitting any application for payment. This list, both initial and any updates, shall provide complete and accurate information in the following form:
        a.  Vendor/Subcontractor's Name
        b.  Vendor/Subcontractor's Address
        c.  Vendor/Subcontractor's Telephone Number and Representative
        d.  Amount of Purchase or Subcontract Amount

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 6
Subcontract No. 1056-0026-SC

All payments to Subcontractor shall be withheld until any information as requested above is provided to the Contractor.

B.   1.   The Subcontract is awarded on the basis of Contract Line Item Nos. (CLINs) 0001.

2.   In the event the Owner awards Contractor any of the following options within the time frame prescribed in the General Contract, the Subcontract amount will be adjusted by the lump sum amount or any combination of amounts listed below. Scope of work and all other terms and conditions executed for the Base Bid Subcontract will apply to the Options. The Options will be executed by formal change order to this Subcontract contingent upon Contractor's receipt and formal execution of the modification(s) from the Owner.

| Option Item | Description | Option Amount | Bond Premium |
|---|---|---|---|
| 1 | FFE | $ N/A | $ N/A |
| 2 | UPS System | $ N/A | $ N/A |
| 3 | Art Sculpture | $ N/A | $ N/A |
| 4 | Access Roadway | $ N/A | $ N/A |
| 5 | Access Roadway | $ N/A | $ N/A |
| 6 | Data Center / Secure Comm Room | $ N/A | $ N/A |

C.   Limitation of Funds and Related Obligations:

1.   **Limits on Government Funding:** In accordance with DFARS 252.232-7007, Limitation of Government's Obligation (April 2014), this project is being incrementally funded. The sum of $82,016,750.00 out of $127,000,000.00 for the task order is presently available for payment by the Government and allotted to this contract. Within that sum, the Government has stated that the Contractor is obligated to complete the design of the project.

   a.   **Limitation of Contractor's Obligation:** The amount of $0.00 (0 %) is presently allotted for your Subcontract amount for the performance of those activities set forth in Rider paragraphs 1 and 2 above. It is expressly understood and agreed that this amount is the maximum liability of the Contractor or its surety under either the Contract or any Miller Act payment bond.

   b.   **Subcontract Price:** The agreed fixed price for the performance of the work under this Subcontract is $5,578,000.00. It is further expressly agreed that there shall be no adjustment to this fixed amount arising out of and related to the further allotment of funds to this Subcontract unless, and only to the extent, that the Contractor is actually compensated therefore by the Government on behalf of the Subcontractor.

   c.   **Performance Obligation:** For items(s) identified in Rider paragraphs 1 and 2 above, the Subcontractor agrees to perform up to the point at which the total amount payable by the Contractor, including reimbursement in the event of termination of those item(s) for the Government's convenience, does not exceed the total amount currently allotted to the Subcontract. The Subcontractor is not authorized to continue work, incur costs, or incur obligations under any sub-subcontract or purchase order on those item(s) beyond that point absent the prior, express written approval of the Contractor. Regardless of anything to the contrary in the Subcontract, including but not limited to the clause entitled "TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT", neither the Contractor nor its surety shall be obligated in any event to reimburse the Subcontractor in excess of the amount allotted to the Subcontract for these item(s) (costs, sub-subcontracts, or purchase orders). As used in this clause, the total amount payable by the Contractor or its surety, in the event of termination of this Subcontract for convenience of the Government includes costs, profit and estimated termination settlement costs for Subcontractor.

   d.   **Purchase Orders and Sub-subcontracts:** Absent the Contractor's advance written consent, the Subcontractor expressly agrees that it will not incur obligations or enter into further sub-subcontracts or purchase orders in amounts, which when added to the Subcontractor's other direct and indirect costs of performance, result in the total liability of the Contractor or its surety in excess of the amount then currently allotted to this Subcontract except to the extent that the Contractor is actually compensated therefore by the Government on behalf of the Subcontractor. The Subcontractor will not enter into any sub-subcontract or purchase order in excess of $5,000.00 without providing advance notification to the Contractor and receipt of the Contractor's prior written approval therefore. In the event of a termination for convenience by the Government in accordance with the provisions of the LIMITATION OF GOVERNMENT'S OBLIGATION (APRIL 2014), the Subcontractor will indemnify, defend and hold harmless the Contractor and its surety, if any, to the extent that the Subcontractor incurs obligations or enters into further sub-subcontracts or purchase orders which result in the total liability of the Contractor, or its surety for the work contained in the scope of this Subcontract exceeding the funds then currently allotted to this Subcontract.

   e.   **Subcontractor Notifications:** Notwithstanding the dates specified in the allotment schedule in paragraph (C.11) of this clause, the Subcontractor will notify the Contractor in writing at least one hundred (100) days prior to the date when, in the Subcontractor's best judgment, the work will reach the point at which the total amount payable by the Contractor, including any cost for termination for convenience, will approximate 85 percent of the total amount then

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 7
Subcontract No. 1056-0026-SC

allotted for performance of the Subcontract. The notification will state (1) the estimated date when that point will be reached and (2) an estimate of additional funding, if any, needed to continue performance of applicable items up to the next scheduled date for allotment of funds identified in paragraph (C.11) of this clause, or to a mutually agreed upon substitute date. The notification will also advise the Contractor of the estimated amount of additional funds that will be required for the timely performance of the item(s) funded pursuant to this clause, for subsequent period as may be specified in the allotment schedule in paragraph (C.11) of this clause, or otherwise agreed to by the parties. If after such notification additional funds are not allotted by the date identified in the Subcontractor's notification, or by an agreed substitute date, the Contractor will terminate any item(s) for which additional funds have not been allotted, pursuant to the clause of the General Contract entitled "TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT".

f.   **Additional Funding:**  When additional funds are allotted for continued performance of the Subcontract, the Government and the Contractor will agree as to the period of contract performance which will be covered by the funds. The provisions of this clause will apply in like manner to the additional allotted funds and agreed substitute date, and the Subcontract will be modified accordingly.

g.   **Equitable Adjustments Related to Funding Allotments:**  If, solely by reason of failure of the Government to allot additional funds, by the dates indicated below, in amounts sufficient for timely performance of the Subcontract, the Subcontractor incurs additional costs or is delayed in the performance of the work under this contract and if additional funds are allotted by the Government, an equitable adjustment will be made in the price or prices (including appropriate target, billing and ceiling prices where applicable) of the item(s), or in the time of delivery, or both. Failure to agree to any such equitable adjustment hereunder will be a dispute concerning a question of fact within the meaning of the clause entitled "Disputes" of the General Contract.  It is further expressly agreed that there shall be no adjustment to this fixed amount arising out of and related to the further allotment of funds by the Government except and only to the extent that the Contractor is actually compensated therefore by the Government on behalf of the Subcontractor.  The Government may at any time prior to termination allot additional funds for the performance of the Subcontract.

h.   **Contractor's Rights:**  The termination provisions of this clause do not limit the rights of the Contractor under the Subcontract. The provisions of this clause are limited to work and the allotment of funds for the Subcontract as set forth in paragraph C.1 & C.2 of this clause. This clause no longer applies once the Contract is fully funded by the Government except with regard to the rights or obligation of the parties concerning equitable adjustments negotiated or allowed under sections C.3, C.4, C.5 and C.8 of this clause.

i.   **No Voluntary Services:** Nothing in this clause shall be construed as authorization of voluntary services whose acceptance is or would be otherwise prohibited under 31 U.S.C. 1342.

j.   **Anticipated Funding:** The Government has advised the Contractor that the Government anticipates allotting funds to this contact in accordance with the following schedule:

| INCREMENT | ESTIMATED FUNDING AMOUNT* | ESTIMATED DATE OF RECEIPT |
|---|---|---|
| Increment 1 | 60% | Upon Award of Project |
| Increment 2 | 35% | December 2018 |
| Increment 3 | 5% | April 2019 |

* These estimated amounts have been modified from the schedule included in the RFP based on the actual amount allocated with the award of the Task Order.

Neither the Contractor nor its surety warrants or guarantees the accuracy of this anticipated funding schedule, which is provided for information purposes only.

k.   The Subcontractor is required to incorporate this paragraph in all lower tier subcontracts, purchase agreements, purchase orders, etc. issued hereunder.

D.   Subcontractor is responsible for all taxes required for its work, in accordance with the terms of the Subcontract.  The State of New Mexico requires contractors working on federal installations in New Mexico to pay state and county sales taxes on materials purchased that are not incorporated in the construction work. For component materials, Caddell can provide access to a Non Taxable Transaction Certificate (Type 6 NTTC) for component material purchases to allow an exemption for the Gross Receipts Tax. In order

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 8
Subcontract No. 1056-0026-SC

to provide the Subcontractor with the Type 6 NTTC Caddell must get the company's CRS ID (this is the State of NM's name for a company's State ID #). Caddell will execute a new certificate for a seller (the Subcontractor) and either print or email the form to Subcontractor's office or Subcontractor can go into the online system using your CRS ID# and print it. No certificate for exemption will be issued by Contractor for materials furnished by second-tier (and below) subcontractors. Any Gross Receipts Tax due or assessed because of your failure to obtain the proper NTTC form will be the responsibility of the Subcontractor.

E.   Subcontractor and their Sub-subcontractors shall be fully responsible for all costs associated with the utilization of a commercially-available electronic system to process and submit certified payrolls electronically to the Owner. This electronic Davis-Bacon payroll system shall be used to prepare, process, and maintain the relevant payrolls and basic records during all work under the General Contract. All Subcontractor incurred costs related to this electronic payroll processing service is included in Subcontractor's Subcontract amount for the work of this Subcontract. Subcontractor training and support shall be provided by the electronic payroll processing service (see document entitled "Subcontractor Training Schedule" which is hereby incorporated as Attachment "B"). Subcontractor is responsible for all applicable terms and conditions as listed in the agreement, effective date of June 13, 2018. A copy of this agreement is hereby incorporated into this document as Attachment "C".

F.   Contractor reserves as an option to require subcontractor to install the decorative glass for all elevators. The elevator glass will be installed for the additional lump sum amount of $13,440.00.

4.   Contracts or Purchase Orders to be awarded as a result of this Subcontract shall be assigned a DO rating in accordance with the Defense Priorities and Allocations System (DPAS) (see 15 CFR Part 700). Purchase Orders and Subcontracts issued by you or by your lower tier subcontractors and suppliers for materials or equipment must be certified and signed by the individual authorized to sign rated orders as follows to meet the requirements of DPAS: (Use of a rubber stamp is suggested).

"This is a rated order certified for national defense use, and you are required to follow all the provisions of the Defense Priorities and Allocations Systems regulation (15 CFR 700).

PRIORITY RATING: TBD
Date(s) Delivery Required: TBD
Signature: _____

The delivery required date must always be entered. Do not use such terms as "immediately" or "as soon as possible" as this does not constitute a delivery date and nullifies the effect of the rating.

5.   Subcontractor shall perform work meeting, but not limited to, the following requirements but not limited to:

A.   Plan and execute all work in compliance with applicable OSHA, USACE EM385-1-1 (if applicable) or other Safety Requirements as required in the General Contract.

B.   Provide trained/competent safety person(s) that will conduct daily safety observations of work areas, equipment, equipment operations and crews to ensure that a high level of safety performance is maintained.

C.   Take immediate action to correct unsafe practices or conditions when discovered or observed, retrain where required by OSHA, USACE EM385-1-1 (if applicable) or other Safety Requirements as required in the General Contract.

D.   Provide and enforce at all times the use of the prescribed personal protective equipment to include but not limited to safety glasses with side shields, hard hat, and ANSI Z-41 (if applicable) hard toe safety boots.

E.   Complete investigation reports on all accidents and/or incidents within 8 hours and forward to Contractor.

F.   Attend and support safety and coordination meetings as scheduled by the Contractor.

G.   Prepare, schedule and attend effective weekly "Tool Box" Safety Meetings in addition to training meetings to review Activity Hazard Analysis and/or Job Safety Analysis (if applicable).

H.   Stop work if imminent danger. Act immediately by reporting to Contractor project management any observed unsafe conditions, hazardous practices or violations of applicable safety rules and regulations after assuring the hazard does not pose immediate danger and need immediate correction.

I.   If Subcontractor uses a crane, the operator shall be qualified and/or certified (where required by the General Contract) and the crane shall have a current annual certificate of inspection. Documentation of applicable certificates, conditions, and recommendations, as required by the crane manufacturer must be kept onsite at all times by the Subcontractor. Riggers and flag persons shall also be appropriately trained.

J.   Excavation/Trenching Safety:
1.   Subcontractor shall provide protective systems for all excavations/trenches five feet or more in depth;

SC RIDER
NNSA ALBUQUERQUE COMPLEX
ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO

Page No. 9
Subcontract No. 1056-0026-SC

    2. All employees of the Subcontractor shall be trained in excavation/trenching related hazards;

    3. Subcontractor's competent person shall inspect each excavation/trench daily prior to worker entry and intermittently during the excavation/trenching operations, as needed;

    4. Subcontractor's spoil piles shall be kept at a minimum of three feet back from the edge of the excavation/trench unless soil conditions dictate more;

    5. Subcontractor shall provide safe means of access/egress into and out of excavations/trenches

K. Subcontractor shall provide positive fall protection means at unprotected heights of six (6) feet or more.

L. Subcontractor by signing this Subcontract acknowledges that violations of applicable safety regulations can carry both civil and criminal penalties for Subcontractor, its Officers and employees.

M. Contractor encourages Subcontractor to have a full time designated safety representative on site during Subcontractors work. Contractor reserves the right to require, at no additional cost to Contractor, Subcontractor to have a full time designated safety representative on site during Subcontractors work if any of the following items occur (1.) If Subcontractor has been issued an EMR of .95 or higher, currently or within the past 3 years, (2.) If Subcontractor has repeat or willful violations in the past 5 years, (3.) If other factors related to subcontractors performance would reasonably require the addition of a full time designated safety representative.

N. Subcontractor will conduct a Daily Task Safety Analysis Meeting with crew members.

O. Subcontractor will provide periodic documented AHA/JSA Re-fresher Training as often as needed.

P. Subcontractor will conduct pre-assignment New Worker Safety Orientations prior to commencing work.

6. Subcontractor shall assist and coordinate Scope of Work with Contractor as relates to LEED compliance. This Project shall be designed and constructed for a sustainable rating of Gold in accordance with Leadership in Energy and Environmental Design (LEED) – Reference Guide for Green Building Design and Construction, 2009 Edition for New Construction (LEED-NC) and the policies and guidelines as established by the U. S. Green Building Council (USGBC). Subcontractor is responsible for complying with the requirements of LEED, the requirements of the Project LEED Scorecard, all LEED credits related to Subcontractor's Scope of Work; including, but not limited to, providing all required documents and maintaining and documenting this effort to Contractor as it relates to the Subcontractor's Scope of Work. To the extent that Subcontractor fails to comply with applicable requirements as set forth in the Project LEED Scorecard in accordance with the Contract Documents and also those established by the Owner and/or Contractor, the Subcontractor shall be subject to any penalties, liquidated damages, and/or terms and conditions as Contractor is to the Owner and also as set forth in this Subcontract.

7. Subcontractor will provide the necessary reports and documentation to the Contractor to work with the Government's Request for Information (RFI) system, (QCS) Quality Control System and the (RMS) Resident Management System software when requested.

8. To the extent that a Commissioning Agent is utilized on this project, the Subcontractor agrees to cooperate and assist Contractor in the commissioning process at no additional cost.

9. In accordance with the Subcontract, Insurance will be provided by the Subcontractor with the following minimum coverages, (Insurance premiums will be paid by the Subcontractor.) All insurance policies must be from insurers authorized to conduct business within the state(s) where the project is located. The insurance companies must also have a Best's Rating of at least "A-" and a financial size of "Class VII" or better in the latest edition of Best's Insurance Reports. (note: check rating and class)

|  | Statutory | (Defense Base Act if Applicable) |
|---|---|---|
| Workers' Compensation and Employers' Liability | $ 500,000 | Each Accident |
| Workers' Compensation and Employers' Liability | $ 500,000 | Disease-Policy Limit |
| Workers' Compensation and Employers' Liability | $ 500,000 | Disease-Each Employee |
| General Liability (Occurrence) | $2,000,000 | General Aggregate |
| General Liability (Occurrence) | $2,000,000 | Products-Comp/Ops Aggregate |
| General Liability (Occurrence) | $1,000,000 | Personal & Advertising Injury |
| General Liability (Occurrence) | $1,000,000 | Each Occurrence |
| General Liability (Occurrence) | $ 50,000 | Fire Damage (Any One Fire) |
| General Liability (Occurrence) | $ 5,000 | Medical Expense (Any One Person) |
| Automobile Liability-on all Self-Propelled Vehicles whether owned, non-owned, or hired. | $1,000,000 | Combined Single Limit Bodily Injury and Property Damage |
| Excess Coverage | $5,000,000 | Each Occurrence/Combined Aggregate |

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 10
Subcontract No. 1056-0026-SC

| | | |
|---|---|---|
| Pollution Coverage (Claims made) | N/A | Each Pollution Condition |
| Errors and Omissions | N/A | Defense Outside the Limits |
| Asbestos Coverage | N/A | Each Occurrence |

Policy endorsed to amend the aggregate limits of liability to apply to this project separately and name Caddell Construction Co. (DE), LLC as additional insured.

All coverage to be written on occurrence basis only.

There should be no separate exclusion for property damage liability arising out of explosion, collapse and underground hazards (XCU) and certificate shall confirm this.

To the extent that the Subcontractor utilizes deductibles or self-insurance in connection with the insurance coverages required herein, all such deductible and self-insured amounts shall be for the account and expense of the Subcontractor.

Subcontractor to provide the above coverage and have the Policy amended or endorsed to the Contractor with the following endorsements: Waiver of Subrogation for Workers Compensation; General Liability Auto and Excess or Umbrella Liability policies; Additional Insured for General Liability Auto and Excess or Umbrella Liability, including completed operations/primary and non-contributory; per project Aggregate for General Liability. Subcontractor's failure to provide such endorsements shall not affect Subcontractor's agreement hereunder.

It is expressly agreed and understood by and between Subcontractor and Contractor that the insurance afforded the additional insured shall be the primary insurance and that any other insurance carried by Contractor shall be excess of all other insurance carried by the Subcontractor and shall not contribute with the Subcontractor's insurance. Subcontractor further agrees to provide endorsements on its insurance policies which shall state the foregoing; however, Subcontractor's failure to provide such endorsements shall not affect Subcontractor's agreement hereunder.

Other Insurances as required by state law.

Within ten (10) days of receipt of this Subcontract and before Subcontractor's work under this agreement is begun and prior to being allowed on the jobsite, the Subcontractor shall furnish certificates of insurance acceptable to Contractor.

Subcontractor shall provide a certificate of insurance with the certificate holder as follows:

Caddell Construction Co. (DE), LLC
2700 Lagoon Park Drive
Montgomery, Alabama 36109

Subcontractor shall provide written 30-day notice (via Email & Certified Mail) to the Contractor if any of the above described policies are to be cancelled or any material change thereto, before the expiration date thereof.

Subcontractor shall also provide a certificate of insurance with the certificate holder as follows:

U.S. Army Corps of Engineers, Albuquerque District
4101 Jefferson Plaza NE
Albuquerque, NM 87109-3435

This certificate must comply with the Contract Documents issued by the Owner.

Subcontractor shall provide the cancellation clause required by FAR 52.228-5 Insurance – Work on a Government Installation.

The cancellation clause is a Federal requirement and this supersedes State requirements. The Owner will not accept the certificates of insurance without the cancellation clause and it must be verbatim.

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 11
Subcontract No. 1056-0026-SC

"Any cancellation or any material change adversely affecting the Government's interest shall not be effective, (1) For such period as the law of the State in which this contract is to be performed prescribes; or (2) until 30 days after the Insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer."

Both the above certificates of insurance should contain the following location/description:

NNSA Albuquerque Complex
Bernalillo County, New Mexico
Contract Number: W912PP-18-C-0004

Both the above certificates of insurance are to be forwarded to felicia.smith@caddell.com or faxed to (334) 394-0193 at the Contractor's Montgomery, Alabama office (2700 Lagoon Park Drive, Montgomery, Alabama 36109) no later than ten (10) days after receipt of this Subcontract. If you have any questions contact Felicia Smith at (334) 394-0161.

Notwithstanding the forgoing Contractor reserves the right to request a copy of any of the insurance policies listed on these certificates and Subcontractor agrees to furnish complete copies of these policies within 14 days of this request.

The Subcontractor agrees to insert the substance of this clause, including this paragraph, in all lower tier Agreements hereunder.

10. A.  Subcontractor by signing below represents and warrants that it is, and will remain, in compliance with any and all provisions of the Immigration Reform and Control Act of 1986 (IRCA), as amended, the Immigration and Nationality Act, as amended, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, and all other applicable immigration laws, rules, and regulations (Immigration Laws) including all form I-9 verification, E-Verify and record keeping requirements. Subcontractor shall indemnify and hold Contractor and its Surety harmless from any claims or liabilities including any damages resulting from work stoppages or delays occasioned by or arising from any subcontractor noncompliance with IRCA or any such immigration laws, ordinances, rules, regulations, orders or decisions, as relates to the work of this Subcontract. The Subcontractor agrees to submit weekly a certification, acceptable to contractor, that its employees have presented the correct documents to legally work in the United States. Subcontractor also agrees to insert the substance of this clause, including this paragraph, in all Subcontract/Purchase Agreement/Purchase Orders hereunder.

B. Subcontractor hereby certifies that it has previously enrolled in the U.S. Citizenship and Immigration Services E-Verify program ("E-Verify") or shall enroll in E-Verify within 30 calendar days of the award of this Subcontract. In accordance with FAR 52.222-54, which is incorporated in this Subcontract by reference, Subcontractor hereby agrees that (1) it shall begin to use E-Verify within 90 calendar days of enrollment to verify the employment eligibility of all new hires, who are working in the "United States" as defined in FAR 52.222-54, within 3 business days after the date of hire; (2) it shall use E-Verify to verify the employment eligibility of all employees assigned to this Subcontract within 90 calendar days of enrollment in E-Verify or within 30 calendar days of assignment to this Subcontract, whichever date is later; and (3) shall include this clause including the requirement for further flow down in all lower tier Subcontract/Purchase Agreement/Purchase Orders. To assure compliance, upon request, Subcontractor shall furnish satisfactory evidence of its enrollment in and use of the E-Verify program and inclusion of this requirement in lower tier Subcontract/Purchase Agreement/Purchase Orders. This clause shall not be applicable if the Subcontract/Purchase Agreement/Purchase Order for construction or services at any tier is for $3,000.00 or less or is for commercial off-the-shelf items ("COTS items") as defined at FAR 52.222-54(a) or modified COTS items that would be COTS items but for "minor modifications" as defined in FAR 2.101(b)(2), "Commercial item," part (3).

11. The Subcontractor, by signing this Subcontract, hereby certifies that it has reviewed the requirements of FAR 52.203-13 and 52.203-14, that it (1) has or will adopt a written code of business ethics and conduct within 30 days of the award of this Subcontract, and (2) will otherwise comply with the applicable requirements of the above referenced FAR provisions, which are incorporated by reference in this Subcontract, and (3) will include the substance of those FAR provisions in lower-tier subcontracts/purchase agreement/purchase orders in excess of $5,000,000 and which anticipate a performance period in excess of 120 days. Upon Contractor's request for verification, the Subcontractor shall furnish to Contractor a copy of its written code of business ethics and conduct and satisfactory evidence of an on-going business ethics awareness and compliance program as required by FAR 52.203-13. This clause is not applicable if the subcontract/purchase agreement/purchase order is less than $5,000,000 or less unless a different dollar limit is required by the terms of the General Contract.

12. If the Owner is an agency of the Department of Defense Subcontractor agrees that any employment agreement for contract services with an individual shall be subject (or conform) to DFARS 252.222-7006.

13. Subcontractor, by signing this Subcontract acknowledges that if this Project is funded, in whole or in part, with ARRA Stimulus funds, Subcontractor agrees to comply with all contract clauses associated with the American Recovery and Reinvestment Act of 2009 at no additional cost to the Contractor, and submit to Contractor information, and documents supporting such information, which Contractor

⁀      **SC RIDER**      ⁀
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 12
Subcontract No. 1056-0026-SC

may require in order to file reports as required by this Act.

    A.    The Subcontractor, by signing (this Subcontract) below, agrees to comply with FAR 52.204-11, American Recovery and Reinvestment Act – Reporting Requirements (MAR 2009) and that Subcontractor will adhere to the individual requirements and deadlines as defined within the FAR and directed by the Contractor.

    B.    The Subcontractor, by signing (this Subcontract) below, agrees to comply with FAR 52.225-23, Required Use of American Iron, Steel, and Other Manufactured Goods – Buy American Act – Construction Materials Under Trade Agreements (MAR 2009) and that Subcontractor will adhere to the individual requirements as defined within the FAR.

14.  To the extent that BIM is utilized on this project, the Subcontractor agrees to cooperate and assist Contractor in the BIM process at no additional direct or indirect cost.

15.  Subcontractor acknowledges that the Subcontract terms and conditions include FAR 52.204-10, Reporting Executive Compensation and First Tier Subcontract Awards, and that the requirements of that provision are material obligations under this Subcontract. By signing this Subcontract, Subcontractor agrees and represents that it will comply with the reporting requirements set forth in FAR 52.204-10, Reporting Executive Compensation and First Tier Subcontract Awards, at no additional cost to the Contractor. Subcontractor agrees to submit a certification form concerning FAR 52.204-10, Reporting Executive Compensation and First Tier Subcontract Awards, acceptable to the Contractor within ten (10) days of the Subcontractor's execution of this Subcontract. Subcontractor's failure to provide an accurate and complete certification form shall be considered to be a breach of this Subcontract by the Subcontractor.

16.  If this Project utilizes the design/build method for project delivery, this section shall apply to the Subcontract. Contractor, relying on pricing from Subcontractor, has submitted a firm, fixed price to the Owner for both design and construction of the Project. Subcontractor acknowledges the nature of this Project as well as the absence of completed design documents at the issuance of this Subcontract. Accordingly, Subcontractor agrees to the following:

    1.    This Subcontract is based upon the RFP documents, Contractor's proposal in response to the RFP, and the Architect's proposal documents which were prepared in response to the RFP. Anything not shown in the proposal documents yet required by the RFP to complete the work of this Subcontract shall be provided at no additional cost.

    2.    The Subcontract amount includes all items necessary for a complete and operable system. Changes to the design development documents, which are consistent with the intent of the RFP, shall not give rise to an increase in the Subcontract amount.

    3.    Subcontractor acknowledges that the Subcontract is based upon the Solicitation and that a full design will be completed. Subcontractor shall participate in the design development and constructability reviews associated with the work of this Subcontract. Subcontractor's participation shall be to ensure that the design meets the RFP requirements and to maintain the work within Subcontractor's Subcontract amount. During the design process, Subcontractor shall receive documents at the various design submission stages to review. Subcontractor shall respond by a specific date identified with each review set . At the end of each review time, a change order will be issued only for Owner mandated changes to the RFP.

    4.    In an attempt to reduce the number/volume of submittals during construction, Subcontractor may be asked to provide specific information for materials and products during the design phase. Such information may be incorporated into the design drawings and specifications. Subcontractor shall not change materials submitted during the design development phase without the prior written approval from the Contractor.

    5.    This Project will implement Partnering throughout the duration of the work. Subcontractor agrees to actively participate in Partnering sessions with the Owner.

17.  Notice of Whistleblower Rights – Subcontractor is prohibited from discharging, demoting, or otherwise discriminating against an employee as a reprisal for disclosing covered factual information, as defined by the Federal Acquisition Regulation, to any of the following entities or their representatives:
(1) an Inspector General; (2) the Comptroller General of the Government Accountability Office; (3) a member of Congress; ,(4) if the contract is with the Department of Defense, the DOD employee responsible for contract oversight or management; (5) the Contractor's representative who has the authority to investigate, discover, or terminate misconduct; (6) the Subcontractor's representative with supervisory authority over the employee or such other person working for Subcontractor who has the authority to investigate, discover, or terminate misconduct; (7)a court or grand jury; (8) the head of a Federal agency; (9) the Recovery Accountability and Transparency Board if the contract is funded under American Recovery and Reinvestment Act of 2009; or (10) a State or Federal regulatory or law enforcement agency. The Subcontractor agrees to and shall include this clause in any lower tier Subcontract, Purchase Agreement, Purchase Order, etc.

**SC RIDER**
**NNSA ALBUQUERQUE COMPLEX**
**ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO**

Page No. 13
Subcontract No. 1056-0026-SC

hereunder.   Upon request, Subcontractor shall provide copies of such subcontracts, purchase agreements reflecting the inclusion of this provision in the terms and conditions.

18. Distributed with this Subcontract is a SBC Certification of the Subcontractor's Size and Status in accordance with the Small Business Act and 13 C.F.R. Parts 121-127.  This Certification must be completed and signed by an authorized representative of the Subcontractor and returned to the Contractor.  Failure to complete, sign and return this document will preclude processing Subcontractor's requests for progress payments.

19. Subcontractor acknowledges the Subcontract terms and conditions include FAR 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving, and that the requirements of that provision are material obligations under this Subcontract.  By signing this Subcontract, Subcontractor agrees and represents that it will comply with the requirements set forth in FAR 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving, at no additional cost to the Contractor.

20. Not Used

21. Subcontractor shall be fully responsible for all costs associated with the required utilization of the web-based Project Management software Procore to process, issue and track Contracts, Change Orders, RFI's, Transmittals, Punch List, Meeting Minutes, Submittals, Schedules, Photos, Drawings and Specifications. Contractor has purchased all user licenses necessary for all Subcontractors to access and use the software. All Subcontractor incurred costs related to this web-based Project Management software is included in Subcontract amount for the work of this Subcontract.  Subcontractor training and support shall be provided by the web-based Project Management software, and generally consists of an hour-long training that is taken at the Subcontractor's convenience.

SOUTHWEST GLASS & GLAZING, INC.

BY: _____

TITLE: **ANTONY S. BACA, PRESIDENT**

DATE: 10/11/18

CADDELL CONSTRUCTION CO. (DE), LLC

BY: _____
   Robert W. Nanney
   Vice President

TITLE: _____

DATE: 11-8-18

**ATTACHMENT B**

*e*-**MARS**
"Compliancy at Your Fingertips"

*e* **Mars, Inc.**
Sub Contractor Information and Training Schedule
**NNSA Albuquerque Complex, New Mexico**

As a sub-contractor, you will be required to use the *e*-**Mars** system for the on-line submittal of Certified Payrolls.  In order to use this system effectively, you should participate in a training session.  Training is done by GoToMeeting and takes about 30 minutes.  It is conducted every **Tuesday and Thursday at 11 AM Pacific Time, 12:00 PM Mountain Time, 1:00 PM Central Time and 2:00 PM Eastern Time**.  Note:  Please fill out **this WORD form by typing directly on it, save it, attach it to an email and return to deanna.urias@wh347.com AND copy aly.way@caddell.com.**

**Deanna and/or Ed are the *e*-Mars Service Representatives that will conduct the training.   When DeAnna receives this form, she will send you the log-in information for the meeting.**

SUBCONTRACTOR OF:
COMPANY NAME:
ADDRESS:

EIN NUMBER:
Is your company already
assigned to e-Mars?
Have you attended the
training for e-Mars?
BUSINESS CLASSIFICATION:
SMALL BUSINESS. WOMEN
OWNED, ETC.
APPROX. START DATE

PERSON THAT WILL BE INPUTTING THE *e*-**Mars** INFORMATION:

FIRST NAME:
LAST NAME:
EMAIL ADDRESS:
CONTACT PHONE:

SCOPE OF WORK:

| | |
|---|---|
| *Jennifer Bishop* | Jennifer@wh347.com |
| *DeAnna Urias* | Deanna.urias@wh347.com |
| *Tom Munoz* | Tom.Munoz@wh347.com |

*e-Mars, Inc.*
"Compliance at Your Fingertips"

*32531 N. Scottsdale Road*
*Suite 105-293*
*Scottsdale, AZ 85266*

**ATTACHMENT C**

# Software Usage Agreement –

THIS SOFTWARE USAGE AGREEMENT – LICENSE (this "Agreement"), consisting of this cover page and the accompanying Terms and Conditions, is entered into by and between e-Mars, Inc. ("e-Mars") and "Caddell Construction" identified below. Capitalized terms used but not otherwise defined in this cover page have the meanings set forth in the accompanying Terms and Conditions.

*Customer   Caddell Construction*
*Name:   Caddell Construction*
*Address:   P O Box 21009*
*City:       Montgomery*                                     *State:    AL*              *Zip Code:  36121*
*Telephone:   334 272 7723*                         *Facsimile:*
*Support Contact: Stephen Strickland*
*Telephone/Cell:  334 394 0234*                  *Email Address:  Stephen.strickland@cadde3ll.com*

The entries made in the table below indicate the Term of this Agreement and the "**Software Usage Fee**" that Customer is responsible for paying to e-Mars. Customer's use of the Software is subject to the accompanying Terms and Conditions. **You are responsible for your Subcontractors' compliance with this Agreement**. Mail payment to: Woodrow Chamberlain, President, e-Mars, Inc., 32531 N. Scottsdale Rd., Suite 105-293, Scottsdale, AZ 85266.

| Term | Software Usage Fee |
|------|--------------------|
| NNSA Office Building in Albuquerque, NM | |

By signing below, Customer represents that it has read and fully understands the accompanying Terms and Conditions, as may be amended by the paragraph above. This Agreement will be deemed executed as of the Effective Date indicated below.

**CUSTOMER:**                                              **E-MARS, INC.:**

By _____                    By _____
Signature of Authorized Representative               Signature of Authorized Representative

_____                           Woody Chamberlain
Print name of Representative                              Print name of Representative

_____                           President
Print Title of Representative                               Print Title of Representative
                                                                    June 7, 2018

_____
Date

                                                                    **Effective Date**

# e' MARS

## TERMS AND CONDITIONS

### 1. DEFINITIONS.

In addition to other terms defined elsewhere in this Agreement, the following terms have the following meanings:

**1.1** "**Compliant Client Software Program**" means e-Mars' electronic Davis Bacon solution, including the documentation thereto.

**1.2** "**Derivative Work**" has the meaning ascribed to it under 17 USC §101.

**1.3** "**Hosting Services**" means the provision of access to the Compliant Client Software Program.

**1.4** "**Intellectual Property Rights**" means any and all rights existing under patent law, copyright law, moral rights law, trade secret law, trademark law, unfair competition law, publicity rights, privacy rights and any and all other similar proprietary rights, and any and all renewals, extensions and restorations thereof, now or hereafter in force and effect anywhere in the world.

**1.5** "**Licensed Field of Use**" means the use of the Compliant Client Software Program solely for creating certified payrolls on a project(s).

**1.6** "**Program Modifications**" means all ideas, innovations, Derivative Works, modifications, software and related documentation, updates, upgrades and improvements to the Compliant Client Software Program.

**1.7** "**Subcontractor**" means any third party that directly or indirectly provides services for or on behalf of Customer, including, without limitation, Customer's independent contractors and such independent contractors' subcontractors.

### 2. LICENSE GRANT.

Subject to the terms of this Agreement, and upon e-Mars' receipt of the Software Usage Fee (as indicated on the cover page) e-Mars hereby grants to Customer a limited, non-exclusive license to use the Compliant Client Software Program during the Term of this Agreement (as indicated on the cover page), and solely within the Licensed Field of Use. The rights granted to Customer under this Section 2 are subject to and conditioned upon the payment of all fees and expenses set forth in Section 4 of this Agreement. In no event shall Customer have the right to decompile, reverse engineer, modify, port, create Derivative Works based upon, assign, or transfer the Compliant Client Software Program to any third parties, except as expressly permitted under this Agreement. Customer may grant access to the Compliant Client Software Program in accordance with the foregoing license only to its employees and to the employees of its Subcontractors that have agreed in writing to confidentiality obligations that are at least as protective of e-Mars as those set forth in Section 5. Upon the termination of this Agreement, all license rights granted to Customer under this Section 2 shall automatically terminate.

### 3. GENERAL SERVICE OBLIGATIONS.

**3.1 Hosting Services.** e-Mars shall provide Hosting Services to Customer in connection with the provision of the Compliant Client Software Program.

**3.2 Customer Cooperation.** Subject to the terms of this Agreement, Customer will fully cooperate with e-Mars, and will provide adequate resources and personnel as necessary for e-Mars to perform and carry out its obligations under this Agreement in a timely manner.

**3.3 Authorized Use Only.** Customer and each Subcontractor that uses the Compliant Client Software Program shall obtain their own unique user-id and password. Neither Customer nor any Subcontractor may access the Compliant Client Software Program using a user-id and password generated for another person or entity.

### 4. FEES.

**4.1 License and Hosting Services.** Customer shall pay to e-Mars the Software Usage Fee indicated on the cover page for Customer's use of the Compliant Client Software Program.

**4.2 Payment Terms.** Customer shall pay the Software Usage Fee promptly after the Effective Date, and may begin using the Compliant Client Software Program upon e-Mars' receipt and confirmation of such payment.

**4.3 Taxes.** Customer is responsible for any sales, use, or similar taxes relating to this Agreement, except e-Mars shall be solely responsible for all taxes based on its income or property.

### 5. CONFIDENTIALITY.

**5.1 Confidential Information.** e-Mars may, from time to time, disclose information to Customer, including without limitation, the Compliant Client Software Program and related documentation, inventions, know-how, ideas, trade secrets, patent, trademark and copyright applications, technical and business plans, proposals, specifications, drawings, data, source and or object code, pricing, costs, procedures, reports, proposed products, processes, the existence and substance of any business discussions, negotiations or agreements between the parties, and business systems, information which e-Mars has received from a third party under a duty of confidentiality and which e-Mars identifies to the Customer as confidential or proprietary techniques, services, or other technical or business information in written or tangible form that has been marked as being confidential by e-Mars, or is known or reasonably should be known by the Customer to be confidential ("**Confidential Information**") The terms and conditions of this Agreement shall also be considered the Confidential Information of each party.

**5.2 Obligations.** Confidential Information shall remain the sole and exclusive property of e-Mars or the third party that provided such information to e-Mars. Customer shall not use, disclose, disseminate, or copy the Confidential Information, except as expressly provided in this Agreement. Customer

shall only allow its and its Subcontractors' employees access to e-Mars' Confidential Information upon such employees being made aware of, and agreeing to be bound by, confidentiality obligations that are substantially as protective of e-Mars as the terms of this Section 5. Subject to the terms set forth herein, Customer shall maintain the confidentiality of the Confidential Information with the same degree of protection and care it uses to protect its own Confidential Information of a similar nature, but shall in no event use less than reasonable care. The obligations in this Section 5 shall continue for the longest period of time permitted under applicable law.

**5.3   Remedy.** Customer acknowledges that the other e-Mars' Confidential Information includes commercially valuable, substantial trade secrets, the design and development of which reflect the effort of skilled development experts and investment of considerable amounts of time and money. Therefore, Customer acknowledges that any use or threatened use of e-Mars' Confidential Information in a manner inconsistent with this Agreement or any other misuse of the Confidential Information of e-Mars will cause immediate irreparable harm to e-Mars for which there is no adequate remedy of law. Accordingly, Customer agrees that e-Mars shall be entitled to immediate and permanent injunctive relief from a court of competent jurisdiction in the event of any such breach or threatened breach by Customer. The parties agree and stipulate that e-Mars shall be entitled to such injunctive relief without posting of a bond or other security; provided, however, that if the posting of a bond is a prerequisite to obtaining injunctive relief, then a bond in an amount equivalent to $1,000 shall be sufficient. Nothing contained herein shall limit e-Mars' right to any remedies of law including the recovery of damages from the other parties from breach of this Agreement.

**5.4   Legal Obligation to Disclose.** Notwithstanding the foregoing sections, if Customer becomes legally obligated to disclose Confidential Information by any governmental entity with jurisdiction over it, Customer will give e-Mars prompt written notice sufficient to allow e-Mars to seek a protective order or other appropriate remedy. Customer will only disclose such Confidential Information as is legally required and will use their reasonable best efforts to obtain confidential treatment for any information that is so disclosed.

**5.5   Return or Destruction of Confidential Information.** Upon termination of this Agreement, Customer shall, at the option of e-Mars, either destroy or return to e-Mars all tangible materials embodying Confidential Information received from e-Mars, shall inform e-Mars in writing within 15 days that it has done so.

**6.   OWNERSHIP.**

**6.1   Compliant Client Software Program.** Customer acknowledges and agrees that the Compliant Client Software Program, and all Intellectual Property Rights contained therein, shall remain the sole and exclusive property of e-Mars. Except for the license grant to Customer in Section 2, which expires upon termination of this Agreement, Customer shall not receive any other rights in or to the Compliant Client

Software Program. Except as permitted under this Agreement, Customer agrees that it shall not sell, assign, convey, sublicense, share with, or otherwise provide any third party with the Compliant Client Software Program, or any portion thereof, or any product or service or Derivative Work that contains, embodies, or is derived from the Compliant Client Software Program, without the express written consent of e-Mars. e-Mars shall have the right, at its sole expense, to register or otherwise protect its Intellectual Property Rights in the Compliant Client Software Program in whatever manner it deems appropriate, including, without limitation, the filing of copyright and copyright applications anywhere in the world.

**6.2   Domain Name.** The parties acknowledge and agree that all right, title and interest in and to e-Mars' domain name located at the website www.wh347.com (the "**Website**"), as well as all related look-and-feel content displayed on the website, shall remain the sole and exclusive property of e-Mars.

**6.3   Pre-Existing Materials.** All Intellectual Property Rights owned by each party prior to the Effective Date of this Agreement shall remain the sole and exclusive property of such party.

**7.   DISCLAIMER OF WARRANTIES.**

THERE ARE NO WARRANTIES WITH RESPECT TO THE COMPLIANT CLIENT SOFTWARE PROGRAM OR CUSTOMER'S USE THEREOF, AND E-MARS DISCLAIMS ALL WARRANTIES OF ANY KIND, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. E-MARS DOES NOT WARRANT THAT THE OPERATION OF THE COMPLIANT CLIENT SOFTWARE PROGRAM, THE WEBSITE OR THE PROVISION OF HOSTING SERVICES WILL BE UNINTERRUPTED OR ERROR FREE NOTWITHSTANDING THE EFFORTS OF E-MARS TO MAKE SERVICES AND THE WEBSITE SECURE. CUSTOMER ACKNOWLEDGES THAT THE INTERNET IS INHERENTLY INSECURE AND COMMUNICATIONS THROUGH THE INTERNET CAN BE MONITORED, INTERCEPTED, REROUTED, COPIED AND READ BY OTHERS. E-MARS SHALL HAVE NO LIABILITY IF DATA OR FILES TRANSMITTED TO OR FROM E-MARS THROUGH THE WEBSITE ARE MONITORED, INTERCEPTED, REROUTED, COPIED, OR READ BY OTHERS, OR IF CUSTOMER'S OR ITS SUBCONTRACTORS' PRIVACY IS NOT MAINTAINED.

**8.   LIMITATION OF LIABILITY.**

IN NO EVENT SHALL E-MARS BE LIABLE TO CUSTOMER OR TO ANY THIRD PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO DAMAGES OR COSTS INCURRED AS A RESULT OF LOSS OF TIME, SAVINGS, DATA, LOSS OF PROFITS, PERSONAL INJURY, DEATH AND PROPERTY DAMAGES, MISREPRESENTATION, INTERRUPTION OF BUSINESS, LOSS OF INFORMATION, COST OF

REPLACEMENT GOODS OR SOFTWARE, LOSS OF GOODWILL, OR OTHER FINANCIAL LOSS) ARISING OUT OF, RESULTING FROM OR RELATED IN ANY MANNER TO THE USE OF OR INABILITY TO USE THE COMPLIANT CLIENT SOFTWARE PROGRAM, OR ANY UNAUTHORIZED ACCESS OR USE THEREOF, EVEN IF E-MARS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF WHETHER SUCH LIABILITY IS BASED IN CONTRACT, TORT, WARRANTY, NEGLIGENCE, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHERWISE. IN NO EVENT WILL E-MARS' TOTAL LIABILITY ARISING OUT OF THIS AGREEMENT EXCEED THE FEES PAID TO E-MARS UNDER THIS AGREEMENT. THIS LIMITATION WILL APPLY REGARDLESS OF THE FORM OF ACTION, WHETHER BASED IN CONTRACT, TORT, WARRANTY, NEGLIGENCE, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHERWISE.

## 9.   TERM AND TERMINATION.

**9.1   Term.** This Agreement will become effective on the Effective Date and will remain in force for the Term indicated on the cover page, unless terminated earlier in accordance with the terms and conditions contained herein.

**9.2   Termination.** This Agreement, and Customer's license to use the Compliant Client Software Program, may be terminated by e-Mars if Customer breaches any of its representations, covenants, warranties or obligations under this Agreement, or if e-Mars has a good-faith belief that Customer or its Subcontractors have or will violate any of the obligations set forth in Sections 2, 5 or 10.

**9.3   Effect of Termination.** If this Agreement is terminated pursuant to this Section 9, all further obligations of the parties under this Agreement shall terminate; provided, however, that the parties shall, in all events, remain bound by and continue to be subject to the provisions set forth in Sections 4 through 6 and 8 through 11. The termination of this Agreement for any reason shall not terminate Customer's obligation to pay e-Mars all amounts due under any Agreement, in the amounts and in accordance with Section 4 hereof, or following the temporary suspension of this Agreement, if this Agreement is later reinstated or resumed. Termination of this Agreement for any reason shall terminate Customer's rights to use the Compliant Client Software Program under Section 2 hereof

## 10.   WEBSITE USER CONDUCT. In connection with Customer's access to and use of the Website and that of any person authorized by Customer to use the Website, Customer is responsible for compliance with all applicable laws, regulations, and policies of all relevant jurisdictions. Recognizing the global nature of the Internet, Customer agrees to comply with all applicable local rules and standards regarding online conduct and acceptable content. Specifically, among other things, Customer agrees that by, while, or through accessing or using the Website it will comply with any "conditions of use" or other similar terms of use made available by e-Mars on the Website. Furthermore, Customer shall not: (i) restrict or inhibit any other user from using or

enjoying the Website; (ii) disrupt or interfere with the Website or its operation or availability, or alter or tamper with the content of the Website; (iii) post or transmit any unlawful, fraudulent, libelous, defamatory, obscene, pornographic, profane, threatening, abusive, hateful, offensive, harassing, or otherwise objectionable information of any kind, including, but not limited to, any transmissions constituting or encouraging conduct that would constitute a criminal offense, give rise to civil liability, or otherwise violate any applicable local, state, national, or foreign law; (iv) post or transmit any information that is invasive of privacy or publicity rights or that violates or infringes in any way upon the rights of others; (v) post or transmit any advertisements, solicitations, chain letters, pyramid schemes, investment opportunities or schemes, or other unsolicited commercial communication or engage in spamming, flooding, or any denial of service attack; (vi) post or transmit any data or information in violation of applicable law (including, but not limited to, data protection, confidentiality, and privacy laws and regulations); or (vii) post or transmit any information or software which contains a virus, worm, or other disabling device or harmful component.

## 11.   GENERAL PROVISIONS.

**11.1   Assignment.** Customer may not assign this Agreement, or any rights conferred under this Agreement, without the express written consent of e-Mars, and any assignment by Customer in violation of the foregoing shall be void and of no effect.

**11.2   Notices.** All notices and demands hereunder shall be in writing and shall be served by personal service or by mail upon the individual identified below (or to such different individual as may be later designated by such party by written notice to the other party). All notices or demands by mail shall be by certified or registered mail, return receipt requested and shall be deemed complete upon receipt.

If to e-Mars:

Woodrow Chamberlain, President
e-Mars, Inc
7532 East Club Villa Circle
Scottsdale, AZ 85266

If to Customer: at the address indicated on the cover page

**11.3   Governing Law; Binding Arbitration.** The terms and conditions of this Agreement shall be enforced and interpreted in accordance with the laws of Tennessee. THE PARTIES AGREE THAT, EXCEPT FOR E-MARS' PURSUIT OF INJUNCTIVE RELIEF PURSUANT TO SECTION 5.3, ANY CLAIM, DISPUTE, OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM UNDER ITS CODE OF PROCEDURE THEN IN EFFECT (available via the Internet at www.arb-forum.com, or via telephone at 800-474-2371).

**11.4   Waiver.** The waiver by any party hereto of any right hereunder or the failure to perform or of a breach by any other

party shall not be deemed a waiver of any other right hereunder or of any other breach or failure by said other party whether of a similar nature or otherwise.

**11.5 Force Majeure**. E-mars shall not be responsible for delays or failure of performance resulting from acts beyond the reasonable control of such party. Such acts shall include, but not be limited to, acts of God, strikes, walkouts, riots, acts of war, epidemics, failure of suppliers to perform, governmental regulations, power failures, earthquakes, or other disasters.

**11.6 Headings**. The titles and headings of the various Sections of this Agreement are intended solely for reference and are not intended for any other purpose whatsoever or to explain, modify, or place any construction on any of the provisions of this Agreement.

**11.7 All Amendments in Writing**. No supplement, modification, or amendment of this Agreement shall be binding, unless executed in writing by a duly authorized representative of each party to this Agreement.

**11.8 Entire Agreement.** The parties have read this Agreement and agree to be bound by its terms, and further agree that it, constitutes the complete and entire agreement of the parties and supersedes all previous communications, oral or written, between them relating to the license and to the subject matter hereof. No representations or statements of any kind made by either party that are not expressly stated herein shall be binding on such party.

**11.9 Counterparts**. This Agreement may be executed in two or more counterparts (signature by facsimile shall be sufficient), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.



***Email form to Marcia.Franklin@Caddell.com or Fax form to:
(334)394-0188 w/Attention: Marcia Franklin***

Co. 01

VENDOR   SOUG004

PRENOT DATE  6/23/20

PRENUTE RESENT

CONFIRMED  6/30/20

**Subject: Electronic Funds Transfer (EFT)  Automatic Clearing House (ACH)**

Caddell Construction Co. (DE), LLC is pleased to announce the use of electronic funds transfer (EFT) for the disbursement of vendor payments. Electronic transfer of funds is also referred to as Automatic Clearing House Transaction (ACH).

Electronic funds transfer of vendor payments will make it possible for vendors to receive payment electronically, thereby eliminating paper check disbursement and decreasing the time usually required for the issuance and mailing of paper checks.

To be a participant in the ACH payment program with Caddell Construction Co. (DE), LLC please completely fill out the **_ACH Payment Enrollment Form_** below and return it to:
Caddell Construction Co. (DE), LLC 445 Dexter Ave, Suite 11000, Montgomery, AL 36104, Attention: Controller

### PAYEE/COMPANY INFORMATION

Company Name: Southwest Glass & Glazing

Address: 7301 Bluewater NE

City, State, Zip: ALBUQUERQUE, NM 87121

Contact Person: Brandon Wales                Phone Number: 505 445-0602        FEIN: 85-0203475

Payment Notification E-mail Address is **REQUIRED**: ron@southwestglass.com

### FINANCIAL INSTITUTION INFORMATION

Bank Name: Sun First Bank

Address: 7103 4th Street Nw

City, State, Zip: Los Pachecos, NM 87107

ACH Coordinator Name: Bradon Wales                Telephone Number: (505) 445-0602

Account Title: Senior Accountant            Type of Account: _v_  Checking ___ Savings

Nine Digit Routing Number: 061000104        Account Number: 1000261277536

We hereby request that Caddell Construction Co. (DE), LLC make all future payments by ACH transfer. We acknowledge that Caddell Construction Co (DE), LLC retains the right to withdraw funds, within a reasonable time period, deposited to our account in error.

Authorized Signature: _Brandon Wales_        Date: 06/22/2020

Printed Name: Brandon Wales            Title: Senior Accountant

Rev. 05 10 2010

## Exhibit "3"